# LEWIS F. DOWNS *vs.* HARRY F. MILLER.

*Fraudulent Conveyances—Deed by Husband to Wife for Simulated Consideration in Fraud of Existing Creditors.*

A man who was indebted to different persons to a greater amount than he was able to pay conveyed certain real estate to his wife by a deed reciting a consideration of "eight hundred dollars cash in hand paid, the receipt whereof is hereby acknowledged !" A bill in equity was filed by a creditor of the husband to vacate the deed because made in fraud of the subsisting creditors of the grantor. The answer of the defendants alleged that the grantor had borrowed certain sums of money from his wife at different times amounting in all to about $561, and that the deed was made to secure to her the payment thereof. The property conveyed was worth twice as much as the consideration set up in the answers and attempted to be sustained by evidence. The wife died after the institution of the suit. *Held,*

1st. That the evidence establishes that the deed was not made in good faith, but with intent to hinder and delay the creditors of the grantor and is invalid as to them.

2nd. That the decree of the lower Court annulling the deed and directing the property to be sold for the payment of the debts of the grantor is affirmed, and that in the distribution of the proceeds of sale the representatives of the wife will have a right to show, if they can, that at the time the grantor obtained money from her he promised to repay the same and thus created the relation of debtor and creditor, entitling her representatives to share in the distribution of the proceeds of sale after satisfying prior liens.

Appeal from a decree of the Circuit Court for Washington County (Sloan, J.)

The cause was argued before McSherry, C. J., Boyd, Pearce, Schmucker and Jones, JJ.

*Lewis D. Syester*, for the appellant.

The relation of debtor and creditor is established between the husband and wife, beyond any controversy, and the appellants have the further proof of the *bona fides* of the transaction in the person of Albert Downs, a son, who was present when some of the notes were signed and when the deceased wife called upon her husband for security for the loan. The obligations thus held by the wife are such as could have been enforced against him or his estate. *Crane* v. *Barkdoll*, 59 Md. 534; *Stockslager* v. *Mechanics' Loan Institute*, 87 Md. 238.

In this State it is only necessary to satisfactorily establish the relation of debtor and creditor between the husband and wife and if the dealing is free from bad faith on the part of either, the husband has a right to devote his property to pay her. *Grove* v. *Baker Co., &c.*, 63 Md. 496; *Levi* v. *Rothschild*, 69 Md. 348; *Crane* v. *Barkdoll, supra ; Stockslager* v. *Mechanics' Loan Institute, supra.*

The appellant explains the difference between the consideration mentioned in the deed to his wife and his indebtedness to his wife, by saying that his wife was to assume the payment of the mortgage indebtedness which existed on the property at the time of his conveyance to her. However, the consideration stated in the deed from husband and wife is to

be taken as *prima facie* true as in the case of other parties. *Mayfield* v. *Kilgore*, 31 Md. 240; *Stockslager* v. *Mechanics' Loan Institute, supra ; Stockett* v. *Holliday*, 9 Md. 480.

The principle is undisputed that at common law, and independent of our insolvent laws, a debtor may secure one creditor to the exclusion of others either by payment or *bona fide* transfer of the property. *Anderson* v. *Tydings*, 3 Md. Ch. 167; *Hickley's case*, 5 G. & J. 377; *Cole's case*, 1 Gill, 412. There is no absolute legal presumption that the conveyance of land made by a debtor to his wife is fraudulent as against the creditor of the husband whose judgment was recovered after the conveyance. *Hussey* v. *Castle*, 41 California, 239; *Grant* v. *Ward*, 64 Maine, 239.

As a sale of the property has been made by the trustee appointed by the Court below, and the fund realized therefrom is in his hands, there is no purpose to assail or impeach the title of the purchaser under those proceedings. The indebtedness of the husband to the wife having been shown, however, we contend that there should be an application of that fund first to the payment of the balance on the mortgage indebtedness and then in satisfaction of the wife's claim. *Economy Savings Bank* v. *Gordon*, 90 Md. 504; *Erdman* v. *Rosenthal*, 60 Md. 316; *Bayne* v. *State*, 62 Md. 103; *Hull* v. *Deering*, 80 Md. 432; *Green* v. *Earley & Townsend*, 39 Md. 223; *Milholland* v. *Tiffany*, 64 Md. 455; *Nicholson* v. *Condon & Son*, 71 Md. 621.

*Wm. H. A. Hamilton*, for the appellee.

At the time the deed was made the Act of 1898, ch. 457, provided "that no acquisition of property passing to the wife from the husband after coverture, shall be *valid* if the same has been made or granted to her in prejudice of the rights of his subsisting creditors." Was not the conveyance made by the appellant "in prejudice of the rights of his subsisting creditors and under circumstances which a Court of equity cannot sanction?"

As against creditors, a transfer of property must be *bona fide*

as well as for value. *Chatterton* v. *Mason, R,* 86 Md. 236. Yet the answer of the husband and wife admits the insolvency of the husband at the time the conveyance was made, and there is no attempt to prove his possession of any other property wherewith to pay his debts. The only defense attempted is that the wife was a creditor of the husband at the time the property was conveyed to her for money borrowed from her. Where a husband, as in this cause, undertakes to prefer his wife to the exclusion of his other creditors there must be proof of the *clearest* and *most satisfactory* character of the existence of the relation of debtor and creditor between them. *Stockslager* v. *M. L. & S. Institute,* 87 Md. 234. There must be an express promise to repay the money obtained by the husband from the wife at the time it was obtained. *Kuhn* v. *Stansfield,* 28 Md. 210; *Hill* v. *Hill,* 38 Md. 183; *Taylor* v. *Brown,* 65 Md. 366; *Jenkins* v. *Middleton,* 68 Md. 540; *Levi and Wife* v. *Rothschild,* 69 Md. 351.

There was not clear and *satisfactory* proof of the relation of debtor and creditor as subsisting between the wife and husband in this cause, at the time of the conveyance, and of the fact that at the time he obtained money from his wife he promised to repay it to her. The conveyance was an effort to put his property beyond the reach of his creditors.

JONES, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Washington County, which set aside and annulled a deed made by the appellant, Lewis F. Downs, to his wife, upon the ground that it was so made "in prejudice of the rights of his subsisting creditors." It appears that the appellant was indebted to a partnership trading as Harman & Miller and located in business at Hagerstown, in this State. This indebtedness was evidenced by three several promissory notes all of which were transferred to the appellee to whom a part of the debt was paid, and who for the balance thereof obtained on the 12th day of February, 1900, in the Circuit Court for Washington County, a judgment amounting to $410.30 in the

usual form.　At the time this indebtedness was incurred by the appellant he owned and was possessed of a house and lot in Williamsport, Maryland.　This property he had purchased in 1895 for $600 and to secure this purchase-money had mortgaged it to the vendor for the full amount of the price thereof.　On the 8th day of November, 1899, while indebted as aforesaid and just prior to the obtention of the judgment against him by the appellee, which has been mentioned, the appellant conveyed this property to his wife, Mary Kate Downs—the deed reciting the consideration as "$800.00 cash in hand paid."

After obtaining his judgment the appellee filed his bill in the present suit in the Circuit Court for Washington County, assailing this deed as having been fraudulently made, and with the object "to hinder, delay and defraud" the appellee and "other creditors of their just and lawful debts ;" and charging "that at the time of his making said deed to his wife, the said Lewis F. Downs (appellant), was largely indebted and insolvent, and had not the means of paying his debts, apart from the property so conveyed by him."　The appellant and his wife answered the bill and denied that there was any fraud in the making of the deed by the appellant to his wife.　All other facts alleged in the bill were either admitted or were not denied.　The answer further averred "that the conveyance was made by the said Lewis F. Downs to his wife to secure to her the sum of $561.34 which the said Lewis F. Downs had borrowed from his wife and for which the said Mary K. Downs held notes of the said Lewis F. Downs for the following amounts : March 13th, 1898, $69.35; September 13th, 1898, $298.12; October 27th, 1899, $193.87; that said conveyance was made to pay back and secure his wife for the money the said Lewis F. Downs had borrowed as aforesaid."　The claim is then made that "under the law the said Lewis F. Downs had a right in law and equity to protect the claim of his wife which she had against him and to treat her as any other creditor of his."

In disposing of the case upon this appeal, and upon the

record we have here, it will not be necessary to determine the question whether the claim upon which the defense of the appellant and his wife was based by their answer, that his wife, the grantee in the deed in question, was his creditor, as alleged therein, is sustained by the proof. We may assume that the appellant was indebted to his wife at the time of making to her the conveyance here in controversy ; and that therefore there was, to the extent of the indebtedness he is able to show, a valuable consideration for the conveyance so made. With this admitted, unless the conveyance was also made *bona fide,* it cannot be held valid as against other creditors, even though the consideration be not only valuable but adequate. *Twyne's case,* 1 *Smith's Lead. Cases,* 1; *Story's Eq. Jur.,* vol. 1, sec. 369; *Glenn* v. *McNeal et al.,* 3 Md. Ch. Dec. 349; *Chatterton* v. *Mason,* R. 86 Md. 23 6; *Cooke, Garn.,* v. *Cooke,* 43 Md. 522, and cases there cited.

The inferences that are afforded against the *bona fides* of the conveyance here in controversy by the disclosures of the record are, we think, too strong to be resisted. And in dealing with these disclosures we may do so irrespective of legal presumptions or of any question of the burden of proof. As has been seen the bill of complaint alleged that at the time of making the conveyance to his wife the appellant was insolvent and largely indebted "and had not the means of paying his debts apart from the property so conveyed" to her. The clause of the bill in which this allegation was made was answered evasively by the appellant and his wife. There is no specific denial of the allegation, and the answer contains no suggestion that at the time in question the appellant was possessed of property or means of paying his debts apart from the property embraced in the deed to his wife. Between the time of the filing of the answer and that of the taking of testimony in the case the appellant's wife died ; but he testified in the cause and with full opportunity to show that he had other means or property with which to satisfy his debts outside of the conveyance to his wife, there is no proof or suggestion that such was the case. All that appears with reference to

other means or property is evidence that two judgments which the bill of complaint alleged that the appellant had confessed at dates subsequent to the conveyance to his wife, and prior to the date of appellee's judgment had been satisfied with money derived to him from his father's estate. As a showing by the defendants below that the allegations in the bill of the appellant's insolvency, and that he "had not the means of paying his debts, apart from the property" conveyed to his wife, were not true in point of fact, would have been very material matter of defense to the bill; that neither upon the part of the appellant nor of his wife was there even an attempt at such defense is very significant, and affords the very strong, if not the inevitable, inference of the inability of the appellant to deny the allegations in question, and consequently that they were tactily admitted as true.

Under the conditions then charged in the bill, the appellant made the deed to his wife in which it was recited that it was made in consideration of "$800 cash in hand paid, the receipt whereof is hereby acknowledged." We need go no further than the answer of the appellant and his wife to the bill of complaint in the cause to find that the consideration named in the deed was pretended and simulated. The answer avers that the deed was made upon a very different consideration from that expressed in the deed. What we have seen was averred in the answer to be the real consideration for the conveyance, was altogether different in character, and materially different in amount and value, from the professed consideration recited therein. This is not consistent with *bona fides* in the transaction. If the deed was really made to repay or secure to the wife money borrowed from her by her husband, the grantor, why was this not made to appear in the deed? And why was it that not even the true amount of the indebtedness, claimed to exist, was stated as the consideration? And why was the amount exaggerated so as to cover more nearly the full value of the property? And why was the transaction made to appear as an out and out purchase by the wife for this exaggerated amount paid in cash? All this, taken n

connection with the fact that at the time of making the con-
veyance the appellant was being pressed by his creditors af-
fords a strong inference that the motive of the parties to the
deed was to withdraw the property conveyed thereby from the
reach of such creditors.   There must have been some motive,
or at least that is a natural and legitimate assumption, for
making the deed express a simulated instead of what is now
set up as the real consideration, other than merely satisfying
or securing to the wife money claimed to have been borrowed
from her, and the one, which the circumstances of the case
most naturally suggest and logically point to, is that of en-
deavoring to secure the property against the pursuit of a
creditor.

The appellant in his testimony in reference to the consider-
ation for the deed to his wife said, to an inquiry upon cross-
examination, that his wife had paid him "between five and six
hundred dollars and she was to satisfy the mortgage."   This
mortgage as we have seen was given to secure the purchase-
money of the property in question at the time the same was
sold and conveyed to the appellant.   At the time of the con-
veyance of the property by the appellant to his wife there re-
mained owing on the mortgage about $300.   That payment
of this balance of the mortgage debt by the wife was a part of
the consideration for the conveyance which the appellant made
to her was not mentioned or expressed in the deed.   It was
not referred to nor set up in the answer of the defendants be-
low as forming part of the consideration for the conveyance ;
nor was it mentioned by the appellant in his testimony in chief ;
and was only mentioned by him under pressure of cross-ex-
amination and apparently to account for the difference be-
tween the amount of money he testified to having received
from his wife and the amount of the consideration expressed
in the deed here in controversy.   If it had been agreed be-
tween the parties to this deed that the assumption of the bal-
ance of the mortgage by the grantee was part of the consider-
ation therefore it is rather remarkable that this should have
escaped all mention until the course of the cross-examination

of the appellant suggested that it might supply a necessary explanation.  It is to be observed however that the appellant does not say in his testimony which has been quoted that it had been so agreed but only says that "she (the wife) was to satisfy the mortgage."  Whatever this may mean, it can have no effect upon the inquiry here because it does not appear that the wife had any property of any description other than that of which the appellant had, as alleged in the answer to the bill of complaint, already become possessed.  No means whatever, present or prospective, is shown to have been possessed or expected by the wife to enable her to satisfy this balance of the mortgage debt.

A further consideration bearing upon the inquiry here, and reflecting upon the *bona fide* character of the deed in controversy, is the inequality between what has been ascertained as the actual value of the property embraced in the deed and the amount of money advanced by the wife and alleged to have been the consideration upon which the deed was made.  It appears from the record that the property conveyed by the deed has been sold at trustee's sale under the decree passed by the Court below in this cause and that the price obtained therefor is "$1,195 cash."  What is averred in the answer of the appellant and his wife as the real consideration for the deed is the amount of $561. 34 being the aggregate of several amounts advanced to the appellant by his wife.  Taking the property as clear of the mortgage debt to which it was subject this amount is less than one-half of its ascertained value, and deducting the balance of the mortgage debt from the price obtained it is not as much as two-thirds of the value.  This consideration has the more weight because the conveyance of the appellant to his wife indicates that the estimate which the parties to the deed placed upon the value of the property conveyed accorded with what was ascertained to be its real selling value.  The deed made it appear that the consideration was $800 cash paid ; and the property having been conveyed, as it appears, subject to the balance due on the mortgage debt would indicate that the estimate made of its

value was about $1,100. Now if the parties to the deed in question fixed upon the consideration mentioned in the deed advisedly and with reference to the actual value of the property conveyed they knew when this absolute conveyance was being made of it that the real consideration as stated in their answer was much below the value of it. At the same time they knew that they were leaving other creditors unpaid : that the appellant was leaving himself without means to pay them; and of course intended that the wife should hold the property, as well what would be sufficient to pay her debt as the excess against the other creditors.

The case has so far been treated of with respect to the statements contained in the answer to the bill as to what constituted the consideration for the deed of the 8th of November, 1899. The claim however of the answer that the sum of $193.87 alleged to be due the wife for money borrowed by the appellant was a part of the consideration for the deed, whatever may be the case as to other amounts named, does not seem to be sustained by the proof. The appellant testified as to this amount that he received it sometime in the latter part of 1899, but did not fix the date of receiving it. He further said that out of this sum he paid $50 on account of the mortgage debt. The $50 credit on the mortgage debt appears as of the 23rd of December, 1899, (or the witness said it was about that time.) Then as evidencing this debt there is in the record a promissory note from the appellant to his wife which bears date November 9th, 1899. This proof, which is nowhere otherwise explained, goes to show that at the date of the deed in controversy this claim for $193.87 set up for the wife was not due to her ; and could not therefore have made a part of the consideration for the deed as for money paid by her to the appellant. This being so the consideration for the deed at the time it was made would be largely reduced ; and the inequality between the actual consideration and the value of the property conveyed by it would become proportionately greater. Mere inadequacy of consideration is not of itself sufficient to vacate a deed as against

the grantee unless so glaring as to "satisfy the Court that the conveyance was not made in good faith;" but it is a circumstance to be considered; and one affording inferences upon the question of *bona fides* more or less strong according to the circumstances of the particular case. *Feigley* v. *Feigley*, 7 Md. 537; *Fuller* v. *Brewster & Co.*, 53 Md. 358. There are cases in which it has been given much weight. *Glenn* v. *McNeal*, 3 Md. Ch. Dec. 349; 4 Md. 87; *Worthington* v. *Bullett*, 6 Md. 173.

The considerations which have been adverted to apply in this case to both parties to the deed—grantor and grantee alike—necessarily so from their relations to the transaction in question. And we think they are sufficient to require the holding of the deed of the 8th of November, 1899, invalid and void as against the creditors of the grantor (appellant), who were such at the date thereof as was done by the Court below.

We shall not undertake to determine conclusively the question whether or not Mary K. Downs was a creditor of the appellant, her husband. The proof in the record is not in a condition upon that question, perhaps, especially in regard to the claim of $193.87 already alluded to, to enable us to do that without possible injustice to the parties concerned. It seems to be clear that the appellant received advances of money from his wife to which she became entitled from the estates of certain deceased relatives. The mere receipt and appropriation of this money by the appellant did not make his wife a creditor. Unless the money was obtained by him upon the "promise made by him at the time that it should be repaid or secured" to her, "the relation of debtor and creditor was not created between" them. *Kuhn* v. *Stansfield*, 28 Md. 210, 215; *Grover & Baker Sewing Machine Co.* v. *Radcliff*, 63 Md. 496. Upon the question whether when the appellant obtained the moneys in question from his wife he so obtained them upon a promise to repay or secure them *made at the time* the proof in the record might be more distinct and clear, especially so as to the amount of $193.87 as just indicated.

The decree of the lower Court annulled and set aside the deed of the 8th of November, 1899, directed the property conveyed by it be sold "for the payment of the debts of the said Lewis F. Downs and of any liens prior to such debts ;" and that the proceeds of sale be brought into Court "to be disposed of under the direction" of the Court. When the case is with the auditor to state an account making distribution of the fund in Court, all parties having or asserting claims against the fund as creditors, including the representatives of Mary K. Downs, can submit such claims upon the proofs now in the proceedings, and such further proof as they may desire to submit and as the Court shall direct to be taken. After payment of the mortgage claim the appellee, having a judgment, will be allowed according to his legal priority under that. After payment of creditors of appellant who were such at the date of the deed of the 8th of November, 1899, any balance of the funds remaining will be the property of the representatives in law of Mary K. Downs under the deed to her.

It is not necessary to notice specially the exceptions to testimony contained in the record. All the testimony made the subject of exception is wholly irrelevant and immaterial, entirely without probative force for any purpose in the case and has had no influence whatever in leading to the conclusions reached by the Court. All the evidence to which any reference has been had in reaching such conclusions was before the Court without objection.

The decree appealed from must be affirmed.

*Decree affirmed with costs to appellee and cause remanded.*

(Decided November 20th, 1902.)