# KENNETH Y. SMITH *v.* BIRTIE SUE SMITH

[No. 1130, September Term, 1976.]

*Decided September 13, 1977.*

The cause was argued before Gilbert, C. J., and Moylan and Melvin, JJ.

*Bert W. Kapinus* for appellant.

*Paul R. Wiesenfeld* for appellee.

MELVIN, J., delivered the opinion of the Court.

By decree entered 30 September 1976, in the Circuit Court for Prince George's County, the appellee, Birtie Sue Smith, was divorced *a mensa et thoro* from the appellant, Kenneth Y. Smith. The third paragraph of the decree further provided:

> ". . . that the Defendant KENNETH Y. SMITH is in possession of the personal property of the Plaintiff BIRTIE SUE SMITH in the amount of Four Thousand Four Hundred Dollars ($4,400.00) which he is to return to the Plaintiff at the rate of One Hundred Dollars ($100.00) per month commencing November 1, 1976."

Kenneth presents one question on appeal:

> "Whether in light of the evidence presented the Court had the power to award appellee the sum of $4,400.00 as her share of the parties' personal property?"

The parties were married on 12 August 1973. No children were born of the marriage. At the time of the marriage, the appellee was a commercial airline hostess with a salary of $13,000. Appellant operated a karate studio and, according to appellee, made approximately $18,000 annually. He also owned a three-bedroom house in Bowie, Maryland, (encumbered by a mortgage of approximately $35,000.) where the parties lived after the marriage.

Like most marriages, this one began happily; like many, the happiness was shortlived. Within six months marital storm clouds had gathered. In February 1974, appellant left the home for approximately one month, returned for one week and left again. There followed a period during which appellant intermittently left and returned for short periods. As nearly as we can determine from the record the final separation occurred in April 1975. After that time appellant

did not return to his home until after appellee had been evicted by court proceedings that he instituted against her in October 1975.

The $4,400.00 awarded appellee by the divorce decree represented the following sums she claimed were due her from the appellant:

1) *$2,700.* Appellee gave this sum to appellant immediately after the parties returned from their honeymoon for appellant's use in moving his karate studio from Bladensburg, Maryland to a shopping center in Alexandria, Virginia. According to the appellee, the appellant "wanted to move it near my job [at the National Airport] so he could take me to work . . . . I didn't have a car". She testified that although nothing was said between them at the time she gave him the money, it was her "understanding" that appellant "would give me certain shares and make me one of the officers in the corporation". Appellant denied any such "understanding". He testified, however, that he "felt some sense of responsibility to give her the money back" although he "never thought that [he] owed her the money". He explained:

> "She gave me the money to help me, to help the business, and the business didn't do what it was expected to do. And, yes, I wanted to give her some of the money. The marriage had — whether it lasted or not I had intentions of paying her what I could."

\* \* \*

> "Q. Is it your position the $2700, in fact, was not a loan to you?
>
> "A. No, it was not.
>
> "Q. You felt some sense of responsibility to give her the money back?
>
> "A. Yes."

2) *$1,000.* In December 1973, Appellee contributed this sum toward the total bill of $2,000 for the installation of a

fireplace in the bedroom of the marital home owned by appellant. They both "picked out" the fireplace.

3) *$200.* Appellee contributed this sum toward the expense of installing a patio at the home. She said appellant "wanted to make the house look good. We needed a patio".

4) *$300.* Appellee sold her Triumph automobile for "about 300 hundred". She sold it because appellant "said he would take me to work. I wouldn't need a car. I wasn't able to make it to the airport and the Triumph wasn't in good condition. Wasn't able to make it". She turned over the proceeds to appellant. She said she had "no idea" what use he made of the money. He did, however, transport her to and from work in his own car until the marriage began breaking up in February 1974.

5) *$200.* In June 1974, the parties received an income tax refund of $2,000.00 as a result of their joint return. When the $2,000 check was received, payable to both parties, appellee endorsed her name and gave the check to appellant. There is nothing in the record to indicate any understanding or agreement between the parties as to any particular division of the proceeds at the time she gave the check to her husband. She testified that she felt entitled to one-half ($1,000.00) and that appellant had only given her $800.00. The record is silent as to when she received the $800.00 or the circumstances surrounding its receipt.

## I

The chancellor based his monetary award upon appellee's sixth prayer for relief contained in the bill of complaint: "That this Honorable Court determine the rights of ownership of personal property of the parties hereto". In effect, the final decree determined that appellee "owned" $4,400.00 that was "in the possession of" the appellant, who was ordered to return it to its rightful owner.

It is well settled in this state that an equity court, sitting as a divorce court, does not sit in exercise of its

ordinary chancery jurisdiction,[1] and would be without power to determine the parties' ownership of personal property or to apportion it, but for a grant of such power by the Legislature. *See Blumenthal v. Monumental Security Storage, Inc.*, 271 Md. 298, 303, 316 A. 2d 243 (1974); *Gebhard v. Gebhard*, 253 Md. 125, 129-30, 252 A. 2d 171, 173 (1969) and cases there cited. The statutorily granted power to award personal property in a divorce case is contained in two statutes: Code (1974), Courts Article, § 3-603 (c)[2] and Code (1957, 1973 Repl. Vol., 1976 Cum. Supp.) Art. 16, § 25.[3]

It is clear that a decree such as was passed in the instant case can not be based on Courts Article, § 3-603 (c) (enacted by Chapter 220 of the Acts of 1947 formerly codified as Article 16, § 38 in the 1951 Code and Article 16, § 29 in the 1957 Code). In this case the appellee does not seek to establish her ownership of, or claim to, personal property, nor does she seek the sale of any such property in order that the proceeds thereof may be divided. She seeks money — not tangible property. Moreover, the money she seeks is, so far as the evidence shows, no longer "in the possession of" the

---

1. The effect of Acts 1977, ch. 221, commonly known as the "Kapneck Bill", upon this hitherto settled principle is not before us in this appeal.

2. Formerly numbered § 3-603 (b); renumbered to be § 3-603 (c) by Acts 1977, ch. 221:

"A court granting a limited or absolute divorce may determine the ownership of personal property, other than chattels real, held, possessed, or claimed by a party to the divorce proceedings, and in accordance with that determination may:

(1) Make a division of personal property between the parties;
(2) Order a sale of personal property and a division of proceeds; or
(3) Make any other disposition of personal property it deems proper".

3. Art. 16, § 25:

". . . [I]n all cases where a divorce is decreed, the court passing the same shall have full power to award to the wife such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of the divorce, or such part of any such property as the court may deem reasonable . . .".

appellant.[4] The more fundamental weakness in appellee's claim, however, lies in the fact that such a monetary claim simply is not warranted by the terms of the statute. This was the holding in *Brucker v. Benson*, 209 Md. 247, 121 A. 2d 230 (1956). In *Brucker*, the wife claimed from her former husband an amount she alleged was equivalent to her total contributions to a matrimonial, pooled fund used to buy personal property. The money allegedly contributed by the wife came from her earnings subsequent to the marriage. The Court of Appeals, in an opinion by Chief Judge Brune, said:

> ". . . We find it unnecessary at this point to go into the vagueness of the testimony because there is a more fundamental weakness in the appellant's claim.
>
> "This is that such a monetary claim simply is not warranted by the terms of Section 38 of Article 16 [now Courts Article, § 3-603 (c)], which we regard as controlling. By its express terms, its operation is limited to the determination of questions arising between the parties in connection with the ownership of personal property held, possessed or claimed by either or both of the parties. How far these provisions might be invoked if fraud or concealment were involved is not before us, since there are no allegations and no testimony suggesting either". 209 Md. at 252-253.

In the present case there is no evidence of fraud or concealment.

## II

The question remains whether the evidence supports the monetary award, or any part of it, under Article 16, § 25, which provides that a divorce court "shall have full power to

---

4. Due to various factors the appellant's karate shop in Alexandria was not at all successful. At the time of trial, appellant's net income was $400 per month and his financial statement showed monthly expenses of $709 and no money assets whatsoever.

award to the wife such property or estate as she had *when married, or the value of the same,* or of such part thereof as may have been sold or converted by the husband, having regard to the circumstances of the husband at the time of divorce, or such part of any such property as the court may deem reasonable". (Emphasis added.)

In *Hall v. Hall,* 180 Md. 353, 24 A. 2d 415 (1942), decided before the enactment of Chapter 220 of the Acts of 1947 (now Courts Article, § 3-603 (c)) but after the enactment of what is now Article 16, § 25, the Court of Appeals stated that in this State "there is no statutory authority empowering courts of equity, in a case for divorce, to adjust the property rights of spouses, *except to return to a wife property held in her own right before marriage.* Code, 1939, Art. 16, Sec. 41 [now § 25 of the present code]". Thus, under Art. 16, § 25, the power of a divorce court to adjust property rights is limited to property that the claimant spouse possessed at the time of the marriage "or the value of the same". Although this statute appears to grant considerable discretion to the chancellor, such discretion can not be used to circumvent well established principles involving transactions between husbands and wives.

The appellee argues that "the effect of the transfers [of money to her husband or for his account] was . . . to create a personal debt between the parties . . .". We think this argument runs afoul of the principles set forth in *Nihiser v. Nihiser,* 127 Md. 451, 96 A. 611 (1916), where the Court of Appeals, at 455-456, said:

"The law in this State is too clear to admit of any question 'that the wife may become a creditor of the husband, in respect of money or property belonging to her as her separate estate, which the husband has *received under an express promise at the time of repaying to her.* But if such money or other separate property of the wife has been received by the husband, with the knowledge and acquiescence of the wife, without such express promise at the time, no implied assumpsit, either

legal or equitable, will arise to support a claim against the husband or his estate. The wife having the *jus disponendi* of her separate property, if she thinks proper to let her husband have it, or appropriate it, without any express promise or agreement at the time to account for or repay her the amount so received or appropriated, she can not afterwards set up a claim against the husband upon the footing of a creditor. In such case she is taken to have acquiesced in the appropriation of the fund for the common benefit of herself and husband, or for the benefit of the family.' [citations omitted; emphasis in original]".

Assuming, without deciding, that all the sums advanced by appellee were part of her property or estate she had at the time of the marriage, there is no evidence that *at the time of the advancements* there was any agreement by the appellant to repay any of them. Moreover, the evidence is clear that the advancements were completely voluntary and were received by the appellant with the appellee's knowledge and acquiescence. With respect to the $2,700 appellee gave her husband for his business, there is some indication that the consideration for this advancement was her "understanding" that appellant "would give me certain shares and make me one of the officers in the corporation". It is possible, therefore, that, as she neither received any shares nor became a corporate officer, she may have a claim for breach of contract or specific performance against the appellant. This point is not argued on appeal. Rather, appellee argues that the $2,700 should be "treated as a loan" because appellant had, after the break-up of the marriage, expressed a desire to borrow money to repay her when the karate business did not live up to their financial expectations. Apart from the vagueness of this testimony, it is of questionable relevance, for as stated by Judge Levine for the Court of Appeals in *Klavans v. Klavans*, 275 Md. 423, 432 (1975), "[T]he question of whether a purported gift by one spouse to another is made with donative intent turns on

the facts and circumstances prevailing at that particular time. In this context, hindsight and afterthought are of doubtful significance".

We conclude that on the record before us there is no supporting law or evidence to sustain the monetary award in this proceeding. Accordingly, we shall strike the third paragraph from the decree.

> *Decree modified and as modified affirmed.*
> *Costs to be paid by appellant.*