## BRUCKER *v.* BENSON
[No. 89, October Term, 1955.]

248

*Decided March 7, 1956.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Jerome B. Wolff*, with whom was *William S. Brucker*
on the brief, for appellant.

*James C. L. Anderson*, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is the second phase of this case to come before
this Court. In *Benson v. Benson*, 204 Md. 601, 105 A.
2d 733, it was held that the wife, who was the appellant
then as well as now, was entitled to a divorce *a vinculo
matrimonii* on the ground of voluntary separation for a
period of more than three years. Upon remand of the
case a decree of divorce was entered on July 22, 1954.
On August 19, 1954, the wife filed a petition, which gives
rise to her present appeal, in which she sought a mone-
tary decree against her former husband in lieu of, or in
satisfaction of, claims based upon the purchase of per-
sonal property with funds furnished by herself and by
her former husband, in approximately equal amounts,
during their married life together. This appeal is from
an order or decree dismissing her petition and from
rulings on interrogatories propounded by her and from
the trial court's refusal to permit her to amend her peti-
tion. (The title of the present case is explained by the
fact that since the divorce the former Mrs. Benson has
remarried.)

Her petition alleged that during the period of slightly
more than five years (July 1, 1944 to July 30, 1949) when
the parties had lived together as husband and wife, they
acquired "substantial personal property in the form of
farm equipment, Government Savings Bond, automo-
bile, furniture, electrical appliances, livestock and other
miscellaneous property, including wedding presents, with
a value of approximately $7,000." The petition further
alleged that the wife contributed approximately equally
with the husband to the purchase of this personal prop-

erty, and that her earnings amounted to about $9,500 and his to about $11,200 during the above period. Her petition also asserted that she had "received no portion of the mutual personal property either in kind or equivalent value" and that the husband has enjoyed the possession and use of the property since July 30, 1949. The wife sought a monetary decree for $3500 as her share of mutual personal property.

### I. BASIS FOR WIFE'S CLAIM TO PERSONAL PROPERTY.

The legal basis for the appellant's petition must be considered. Though the appellant's brief asserts that her claim is based upon Code (1951), Article 16, Section 38, we note that the relief prayed is in terms which would have been much more appropriate if the case had involved property owned by the wife at the time of the marriage and had fallen within that clause of what is now Code (1951), Article 16, Section 34, which provides that in any case in which a divorce is decreed, the court may "award to the wife such property or estate as she had when married, or the value of the same, or of such part thereof as may have been sold or converted by the husband * * * or such part of any such property as the court may deem reasonable." Since the wife's claim here is based upon her earnings subsequent to the date of the marriage which she says were applied to the purchase of personal property during the marriage, that statute is clearly not applicable.

An equity court in this State, when sitting as a divorce court, does not sit in the exercise of its ordinary chancery jurisdiction and "has no power, unless conferred by the Legislature, to transfer the property of either spouse to the other, or otherwise to dispose of it." *Dougherty v. Dougherty*, 187 Md. 21, 32, 48 A. 2d 451; *Schwartzman v. Schwartzman*, 204 Md. 125, 102 A. 2d 810; *Lopez v. Lopez*, 206 Md. 509, 112 A. 2d 466.

Any rights in personal property to which the wife may be entitled in this proceeding must rest upon Code (1951),

Article 16, Section 38, enacted by Chapter 220 of the Acts of 1947, which reads as follows:

"Whenever a Court shall grant a divorce a mensa et thoro or a divorce a vinculo matrimonii, it shall have the power to hear and determine all questions which may arise between the parties to such proceeding in connection with the ownership of personal property (except chattels real) held, possessed or claimed by either or both of them, and shall have the power to make a division of such property between them, or order a sale thereof and a division of the proceeds of such sale, or make such other disposition thereof as the Court may deem proper."

In this case the appellant does not seek by her petition as filed to establish her ownership of, or claim to, personal property, nor does she seek the sale of any such property in order that the proceeds thereof may be divided. She seeks money—not tangible property—and she seeks it in an amount which she says is equivalent to her total contributions to a matrimonial, pooled fund used to buy personal property.

The manner of computing her claim and the theory of her petition as filed seem to have been substantially as follows: first, to show cash contributions to a pool fund which was to be used in part for the purchase of personal property and in part for improving the real estate which constituted the Benson home and farm; second, to approximate the respective contributions of the husband and wife to this pool; third, chiefly by deducting amounts expended from the pool for other purposes, to approximate the amount or balance supposedly paid out of it for the purchase of personal property; and fourth, because at the time of the separation she did not receive any of the personal property purchased with the pool funds, to charge her former husband with the full amount of her contributions to the fund which may have been applied to the purchase of personal property, regardless of the

present ownership, value, or even existence, of such property. This would, upon divorce, convert all of her alleged contributions towards the personal property fund into demand deposits, repayable by the husband.

When pressed during the trial on the matter of depreciation, the appellant's counsel eventually conceded that an allowance should be made for depreciation. He suggested 50% on what he called "the gross amount" and claimed "about $2,000." The basis for his estimate was straight line depreciation apparently at 20% a year for five years, which he averaged to two and one-half years over the five years of the parties' married life together. He ignored the five years following the separation.

Reverting for the moment to the "demand deposit" theory, we may observe that the appellant's petition ignores the presumption of a gift, which was held to exist in such cases as *Tyson v. Tyson,* 54 Md. 35, *Reed v. Reed,* 109 Md. 690, 72 A. 414, and *Nihiser v. Nihiser,* 127 Md. 451, 96 A. 611. As was said in the *Reed Case,* "A decree for divorce has no retroactive effect; *per se,* it does not legally restore the *status quo* of the parties before marriage, or annul their voluntary and legal acts during coverture." (109 Md. 693, 72 A. 415).

Her petition also ignores whatever effect the gift to her of a substantial interest in the Benson farm may have had upon the financial pool arrangements.

We may note at this point that testimony as to amounts put into the fund, as to amounts expended for purposes other than the purchase of personal property and as to amounts alleged to have been expended for that purpose was both scanty and very indefinite. The appellant seeks to blame this vagueness in part on the rulings of the trial court on her interrogatories, to which we shall refer later. We find it unnecessary at this point to go into the vagueness of the testimony because there is a more fundamental weakness in the appellant's claim.

This is that such a monetary claim simply is not warranted by the terms of Section 38 of Article 16, which we regard as controlling. By its express terms, its operation

is limited to the determination of questions arising between the parties in connection with the ownership of personal property held, possessed or claimed by either or both of the parties. How far these provisions might be invoked if fraud or concealment were involved is not before us, since there are no allegations and no testimony suggesting either.

We are, accordingly, in agreement with the Chancellor that under Section 38 of Article 16 the petition as filed should have been dismissed.

## II. INTERROGATORIES.

The appellant propounded twenty-six interrogatories to the appellee. The trial court required the appellee to answer four of them, and no issue is now presented with regard to those four.

Of the remaining twenty-two, the appellant has apparently abandoned sixteen. We shall, therefore, not consider them. Of the other six, three could have no possible relevance apart from the appellant's theory of being entitled to an accounting and a monetary decree. These pertained to: the percentage of the appellee's income for the years from 1944 through 1953 which was contributed toward the support of his parents (No. 19); the percentage of his income from July 1, 1944 to July 30, 1949 (when the spouses were living together), which was expended on improvements to the family real estate (No. 20); and the gross value of all personal property acquired by him during that same period. Since we have found the appellant's accounting theory and claim for a monetary decree based thereon to be unsupportable, it follows that these three interrogatories dealt with irrelevant matters. Parenthetically, we do not see how No. 19 could have been relevant on any theory as to any period after July 30, 1949, the date when the parties separated.

Interrogatories 14 and 15 dealt with automobiles owned by the appellee at the beginning and end of the period when the parties were married and living together. No. 22 asked the cost of a deep freeze unit purchased by the

Benson family about the year 1947. These might have been relevant in seeking to ascertain any proportionate ownership which the appellant might have acquired in the second automobile or in the deep freeze, but they seem irrelevant to her claim for a monetary decree, which was what she was then seeking. She made no effort, so far as we can tell from the record, to establish a claim to the ownership or part ownership of any specific personal property until the exigencies of the hearing on the merits caused her to seek to amend her petition. Since at the time when the interrogatories were ruled on, no such claim appears to have been made, we find no error in the court's ruling which sustained the appellee's exceptions to these interrogatories.

### III. AMENDMENT OF THE PETITION

During the course of the hearing on the merits the appellant found herself in difficulty in endeavoring to support her claim for a monetary decree. She then sought leave to amend her petition in order to assert claims of ownership or part ownership in various items of personal property mentioned in the testimony, towards the cost of which she said she had contributed through the pool fund referred to above. Leave was denied, though the trial court suggested that she might file a new petition seeking to assert such claims. The appellant feared that a decree dismissing her petition, unless specifically stated to be without prejudice, might operate as a bar to any future petition, and accordingly raises on this appeal the ruling denying leave to amend.

We think that the appellant is entitled to present whatever claims of ownership she may have to personal property. What she may be able to prove in support of such a claim is not before us, though we note that the testimony offered in support of her present petition is indefinite on a number of points which would seem material. Such indefiniteness is probably unavoidable in view of the informality of the financial arrangements with regard to the family fund as to which the appellant testified and the

apparent paucity, if not complete absence, of records of contributions and costs. We are also unable to determine on the present record what effect, if any, the transfer by the appellee's parents of a remainder interest (after life estates reserved to themselves) in the home property to the appellant and the appellee as tenants by the entireties may have upon her claims. (Her interest has, of course, been transformed by the divorce into a tenancy in common with her former husband.)

Ordinarily, the grant or denial of leave to amend is within the discretion of the trial court. *Funkhouser v. Moores,* 179 Md. 266, at 269, *Dougherty v. Dougherty, supra.* The pertinent provision of General Equity Rule 17 (which is substantially the same as the corresponding provision of Code (1951), Article 16, Section 18) is this: "The Court shall at any time before final decree, in furtherance of justice and upon such terms as to payment of costs as may be just, permit any bill, answer, process, proceeding, pleading, or record to be amended, * * *."

In *Perlmutter v. Minskoff,* 196 Md. 99, 75 A. 2d 129, both the Rule and the Section above mentioned were involved; and Rule 19 and Article 16, Section 193 (of the 1951 Code, 182 of the 1939 Edition), giving the court discretionary power to permit the plaintiff to amend his bill after a demurrer to it has been sustained, were also involved. There the Chancellor had allowed both an amendment and a supplement to the bill, and thereafter refused to permit a further amendment. In upholding this ruling, this Court, speaking through Judge Collins, said in part: "The chancellor in this case stated that, as the appellant had made two efforts to set up a good cause of action and had failed, further amendment should not be allowed. The chancellor doubtless thought that amendment could make no difference in the result. * * * We do not find that the chancellor in this case abused his discretion. He left appellant without prejudice to bring a suit at law, which he has done."

In the instant case the appellant's effort to amend her petition came at a very late stage of proceedings—after

the appellant's testimony had been closed and the appellee had elected not to put on any testimony, but to ask for a dismissal at the conclusion of the appellant's case—but it was still before the entry of a final decree. It would obviously have been unfair to have permitted the appellant to amend, without affording the appellee an opportunity to adduce testimony to refute the appellant's new theory of her claim. This could, of course, have been accomplished by a postponement, if necessary. We think, as we have said, that the appellant is entitled to present her claims based upon alleged ownership of personal property, though we express no opinion on the validity or extent of her claims. If that opportunity had been clearly preserved by a dismissal of her petition without prejudice to her right to file a new petition to assert such claims, the practical result might have been substantially the same as if the motion for leave to amend had been granted. However, the decree contains no such saving clause, and we do not think that on the record as it stands, the conclusion could be reached that the appellant could not, by an amendment, state any basis at all for relief under Section 38 of Article 16. We are, therefore, of the view that leave to amend ought to have been granted and that the chancellor went beyond the proper limits of discretionary action in denying it.

Since the case cannot be finally determined until the appellant's amended petition shall have been heard and disposed of (unless she should fail to file such a petition within such reasonable time as may be fixed by the trial court), we shall remand the case to the Circuit Court without affirmance or reversal of the decree, in order to permit the petition to be amended and for further proceedings not inconsistent with this opinion.

> *Case remanded, without affirming or reversing the decree appealed from, for further proceedings not inconsistent with this opinion; the costs in this court to be paid by the appellee.*