## EVANS *v.* EVANS.

1. Where the husband is ignorant of the fact that his wife has already committed adultery, and, in compliance with her importunity, makes to her a gift of real or personal property, the same may be revoked at his instance on his discovery of her previous criminal conduct.
2. A like result will follow if at the time of obtaining the gift the wife has in contemplation subsequent adultery and elopement.

Argued October 21, — Decided November 3, 1903.

Injunction.    Before Judge Spence.    Decatur superior court. August 10, 1903.

There is some conflict in the evidence, but the chancellor having found in favor of the husband, it may be assumed, for the purposes of this hearing, that the land was purchased partly with the husband's earnings and partly with the proceeds of other land paid for by him; that at the earnest solicitation of the wife the title to all property when bought, and the deed to the land in controversy, were made directly to her, for the purpose of avoiding the expense of administration and guardianship in case the husband died first; that she was to make a will devising all the property to the husband, for the purpose of saving like expenses in case she died first; that at all times the wife deferred to the husband in reference to the management and control of the property, and recognized his right to say when and at what price it should be sold; and that $2,500 in cash was earned by the husband, and with his consent deposited in the bank of Moultrie by the wife in her own name. It is nowhere denied that shortly before her elopement the wife purchased an Atlanta check for $2,500 with the money in the Bank of Moultrie, and that she endeavored to sell the two city lots in Americus at a price much below their value; and it appears that she instructed the real-estate agent to conceal the fact of the intended sale from her husband; that she eloped in July, 1903, with Thrash; that they were arrested and brought back to Bainbridge; that she was released on bond, but Thrash for want of a bond was committed to jail on a charge of fornication and adultery; and that she furnished him some money and delicacies while in jail. The evidence for the husband tended to show, that without his knowledge illicit relations had existed between his wife and Thrash for years; that both before and after the execution of the deeds and the deposit of the money this criminal intimacy was in progress. The answer and evidence of the wife make counter-charges and recriminations, and, while admitting the elopement, she denies that she had ever been guilty of adultery with Thrash prior to the execution of the deeds, and denies that they were made for the purpose of being sold and the proceeds used to support herself and Thrash. She denies that there was any agreement to make a will in favor of her husband, and insists that the gifts were intended to be absolute and v. .unout condition or limi-

tation. The petition prayed for an injunction to restrain the wife from disposing of the property, for the appointment of a receiver to manage it until a final hearing, and for a decree canceling the deeds and vesting title to the real estate and money in the husband. At the interlocutory hearing the court granted the prayer for injunction and receiver.

*W. D. Sheffield* and *Russell & Fleming,* for plaintiff in error.
*Townsend & Dickenson* and *Harrell & Hartsfield,* contra.

LAMAR, J. (after stating the foregoing facts.) The instinctive feeling that a gift from a husband to a wife should be revoked on his discovery that she is an adulteress can not change the fact that courts are bound to preserve property rights, and have no power to impose penalties; even conviction for crime working no corruption of blood or forfeiture of estate. Civil Code, § 5725. At the time when divorces were granted by act of parliament there was usually incorporated in the private bill a provision which determined what disposition should be made of the property. Under the old law, by which the husband became the owner of the wife's property, a divorce a vinculo restored to her the property of which he was seized by virtue of the marriage. In cases of marriage settlements, where children and remaindermen might be interested, and where the rights of the parties were fixed by the terms of the settlement and did not arise by operation of law, it has been held that the interests vested thereunder were not affected by the subsequent misconduct of either party. Fitzgerald *v.* Chapman, L. R. 1. Ch. Div. 563, where Jessel, M. R., declined to follow Lord Romilly in Fussell *v.* Dowling, L. R. 14 Eq. 423, and Stuart, V. C., in Jessop *v.* Blake, 3 Gifford, 639. The decisions are not uniform as to the effect of misconduct where there has been a deed of gift from one to the other. Some courts hold that without a stipulation that the gift is to remain of force only during the marriage, it will not be revoked for subsequent adultery of the wife. Lister *v.* Lister, 35 N. J. Eq. 49.

On the other hand, it might with great force be argued that adultery is the most serious of matrimonial offenses; that it poisons the marriage relation, depriving the wife of dower and the right to necessaries (Civil Code, §§ 4689 par. 6, 2478); that as it would be insulting and indecent to incorporate in a deed of gift a provision

making it void if the wife should be guilty of that crime, the husband must be supposed to have given and the wife to have accepted with the implied condition that the property should not be used for the support of the paramour, or for the maintenance of one who had not only violated the vows under which he had promised to endow her with his worldly goods, but had outraged him as a man, and repudiated him as a husband; that the real consideration of such a conveyance was marriage and the continuance of the married state, which failed when by such an act the relation was rendered intolerable. And it is probably for these or similar reasons that the rule in Fitzgerald *v.* Chapman, L. R. 1 Ch. Div. 563, was in large measure changed by act of parliament. In Scotland the offender's claims under ante-nuptial and post-nuptial contracts are forfeited; and at the civil law the guilty party loses all advantages conveyed by the other, whether by contract of marriage or since the marriage. Code Napoleon, § 299.

Even where there was no adultery, but the wife by importunity induced the husband to convey to her certain real estate, and three years thereafter abandoned him without cause, the Supreme Court of Nebraska, in Dickerson *v.* Dickerson, 24 Neb. 530, held, that the husband was entitled to a reconveyance, and that the wife would not be permitted, under such circumstances, to retain title to real estate conveyed at her instance, as a provision for her support in case of his death. But it is not necessary in this case to determine what would be the effect on the gift here if it be shown that the adultery occurred after the deed was executed, because as to all conflicting evidence the finding of the judge must be construed most favorably to the prevailing party, and there was evidence from which he could have found that, without the husband's knowledge, illicit relations between the wife and Thrash had begun prior to the time the money was deposited in her name, and before the husband bought the property and instructed the grantors to make the deeds directly to her; and also that she contemplated a renewal of the intercourse with Thrash. There seems to be no doubt that a gift made under such circumstances will be revoked at the instance of the husband on discovery of the wife's criminal conduct. In Evans *v.* Carrington, 2 DeGex, F. & G. (63 Eng. Ch.) 481, where there was a deed of separation, Lord Campbell held that while non-disclosure of ante-nuptial incontinence by

the wife was not such a fraud on the husband as to entitle him to set aside a settlement made at the time of the marriage (compare Civil Code, § 2425 par. 5), yet it would seem that adultery after the marriage and before separation would void the separation deed; and likewise if the wife induced her husband to execute a conveyance in contemplation of her renewal of the illicit intercourse, this would also invalidate the deed of separation.

That the adultery of the wife, unknown to the husband, would vitiate a subsequent gift, seems also to be recognized in Lister *v.* Lister, 35 N. J. Eq. 58; Chew *v.* Chew, 38 Iowa, 405.

While the wife could hardly be expected to disclose her criminal intimacy with Thrash, yet it is certain that the husband would not have made the gift had he known of the illicit relations. And for her to induce her husband to convey the property to her after she had been guilty of adultery, or in contemplation of subsequent adultery with Thrash, was such a fraud upon the husband as to entitle him to revocation of the gift on discovery of her conduct.        Civil Code, § 3534, par. 1, 2.        This conclusion makes it unnecessary to discuss what was the effect of her failure to make a will, or whether a resulting trust arose in favor of the husband because he paid the purchase-money and directed the conveyance to the wife on the understanding that the property was to be used for the family during their joint lives, the wife and children after his death, or for his use in case of her prior death.        Civil Code, §§ 3159 par. 1, 3160.

Cited for the wife: Finlayson *v.* Finlayson, 3 L. R. A. 801; for the husband: Meldreem *v.* Meldreem, 11 L. R. A. and cases in the notes.        In addition to which see *Bazemore* v. *Davis,* 55 *Ga.* 506 (13); *Baggs* v. *Baggs,* 54 *Ga.* 95; *Greenwood* v. *McBride,* 11 *Ga.* 379; Evans *v.* Carrington, 63 Eng. Ch. 481, 491, 501; Charlesworth *v.* Holt, L. R. 9 Ex. 38; Stultz *v.* Stultz, 107 Ind. 402; Lister *v.* Lister, 35 N. J. Eq. 49; Walton *v.* Smith (Vt.), 39 Atl. 252; Snodgrass *v.* Snodgrass, 40 Kan. 494; 3 P. Wms. 269, 276; Stone *v.* Wood, 85 Ill. 603 (4); 2 Bish. Mar. Div. & Sep. §§ 1654–1659; 2 Bish. Mar. & Div. (6th ed.) 509 (a).        There was no error in enjoining the wife from disposing of the property, or in appointing the receiver to hold the same until final decree.

*Judgment affirmed.        All the Justices concur.*