## MARIE L. REED *vs.* JOHN A. REED.

*Effect of Divorce Upon Tenancy by Entireties—Gifts to Husband During Coverture—Evidence Showing Plaintiff Entitled to Relief Not Asked for in Bill—Remanding Cause.*

When a wife purchases property with her money and causes it to be conveyed to herself and husband as tenants by the entireties, the effect of a subsequent decree of divorce is to convert the tenancy into a tenancy in common, and it does not entitle the wife to claim the entire ownership.

If a wife, during coverture, voluntarily and without any fraud or undue influence on the part of her husband, conveys her property to him, a subsequent divorce does not operate to vest in her an equitable title or claim to such property.

The provision of Code, Art. 16, sec. 37, which gives to the Court granting a divorce power to award to the wife such property or estate as she had when married, does not authorize that Court or a Chancery Court to annul gifts made by the wife during coverture to her husband.

Plaintiff's bill alleged that she had purchased certain land with her own money and had caused it to be conveyed to herself

and her husband as tenants by the entireties; that she had since obtained an absolute divorce from him, and the bill prayed that a decree be made declaring her to be the sole owner of the land. The evidence of the plaintiff showed that she had been induced by the demands of her husband, against her will, to cause that conveyance to be made. *Held,* that although the plaintiff is not entitled to the relief asked for under the averments of the bill, yet the cause should be remanded, with leave to amend the bill by alleging that the conveyance was procured by the fraud or undue influence of the defendant, and opportunity given to both parties to produce evidence relating to that allegation.

*Decided February 11th, 1909.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*John Hinkley* and *Thos. Foley Hisky,* for the appellant.

*J. Kemp Bartlett* and *L. B. Keene Claggett,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appellant, in her bill of complaint in this case, filed in the Circuit Court for Baltimore County, alleges that she was married to the appellee on the 7th day of September, 1894; that after her said marriage she purchased, on the 22nd day of May, 1896, four lots of the ground near Catonsville, in Baltimore County, and paid the consideration therefor, to wit, the sum of fourteen thousand five hundred dollars, out of her separate funds and estate, and that she caused said lots to be conveyed to herself and the appellant "as tenants by entireties" by the deed, a copy of which was filed with the bill; that on the 11th of December, 1905, by the final decree

of the "Probate, Divorce and Admiralty Division of the High Court of Justice" of England she was absolutely divorced from the appellee, and that she "is advised that in consequence of said divorce she is entitled to have said property decreed to be hers, in her own right, free, clear and discharged of any interest therein of her former husband, from whom she has now been divorced." The prayer of the bill is that the property may be decreed to be the property of the appellant, clear of any interest of the appellee; that a trustee may be appointed, "if necessary," to convey the property to her, and that she may have such other relief as her case may require.

The bill, it is to be noted, does not charge that the property was purchased by the appellee and paid for with money belonging to the appellant, or that the conveyance of the property to her and her husband was procured by the fraud or undue influence of the appellee; but the theory on which the bill was filed is that the appellant having been divorced from the appellee, the mere fact that the property was paid for out of money belonging to the appellant is sufficient to authorize a Court of equity, either under the authority of Art. 16, sec. 37 of the Code, or independently of that section, to restore the property to her.

Without considering or determining whether said section, which confers upon the Court granting the divorce "power to award to the wife such property or estate as she had when married," has reference only to the Court decreeing the divorce, or whether Courts of equity, apart from the statute, have such power, it is clear from the decisions in this State that where a wife during coverture voluntarily and without any fraud or undue influence on the part of the husband, conveys her property to him, the effect of a decree for divorce is not to vest in her an equitable title to such property. It has been repeatedly held by this Court that if a wife gives to her husband property belonging to her separate estate, or permits him to apply it to his own use, or he does so with her knowledge and consent, in the absence of proof that it

was given to him to be held in trust for her use, or of a promise by the husband at the time to repay it, it will be presumed that it was intended as an absolute gift to him, and she has no claim therefor against him or his estate. *Edelen* v. *Edelen,* 11 Md. 415; *Kuhn* v. *Stansfield,* 28 Md. 210; *Farm. & Mer. Nat. Bank* v. *Jenkins,* 65 Md. 243; *Jenkins* v. *Middleton,* 68 Md. 540; *Taylor* v. *Brown,* 65 Md. 366.

In the case of *Tyson* v. *Tyson,* 54 Md. 35, the bill was for divorce and restoration to the wife of the property belonging to her when married, or the value thereof. The Court below granted the divorce and awarded alimony, but omitted to award to the plaintiff certain property, and because of such omission the appeal was taken from the decree. The property which it was claimed should have been awarded to the wife, consisted of a legacy to her from her father, amounting to $2,873.75, which had been paid to the husband and wife jointly by the executor of her father's estate, and for which they had executed a joint release. Her claim was resisted on the ground that the legacy had been appropriated and converted by the husband, with the knowledge and consent of the wife, and without any agreement to repay it, or to hold it for her use and benefit. The Court, in construing Art. 16, sec. 37 of the Code, said that it was not contemplated "to authorize the Court to annul all previous dispositions made by the wife during coverture by gifts to her husband or others. * * * If the husband received and applied the fund, whether money, goods or chattels, or collected *choses in action,* with the wife's privity and consent, and without an agreement or promise to repay or restore it, no legal obligation rests on the husband to restore it; no right of action enures to her, and, to that extent, her rights are extinct.

A decree for divorce has no retroactive effect; *per se,* it does not legally restore the *status quo* of the parties before marriage, or annul their voluntary and legal acts during coverture.

*Bishop,* treating of the consequences of divorce flowing by

law, says: "Coming now to consider the effect of the disso-
lution of a valid marriage. upon property rights, we must re-
member that the decree of divorce, so far from undoing the
original marriage, expressly affirms it, and, therefore, does
not restore the parties to their former condition, but places
them in a new one. Consequently all transfers of property
which were actually executed either in law or fact abide;
for example, the personal estate of the wife reduced to pos-
session by the husband remains his after a divorce, the same
as before." 2 Bishop, 706. Again (p. 731), referring to
the effect of a divorce a mensa: "This divorce does not at
common law, and without statutory aid, change the relation of
the parties as to property."

Assuming that the Code confers on the Court the power of
awarding the wife all the property she had during coverture,
as well as that possessed prior and at the time of the mar-
riage, that power must be qualified by the rights acquired by
the husband, or others through him, claiming with her priv-
ity and consent.

If the effect of knowledge and acquiescence on the part of
the wife was sufficient to destroy her right as creditor in
this case, unless there was an agreement or promise of the
husband to repay, it follows necessarily that the conversion of
the money by the husband, with the wife's concurrence, and
her conjoint act and deed, must equally destroy her right to
recover it as her separate property, after divorce, after the
lapse of a series of years, without any promise or agreement
of the husband to return or to repay it.

There was no loan or trust created between them, but the
transaction amounted to an absolute gift. The wife exer-
cised her jus disponendi absolutely and without reserve.

Under the averments of the bill, viz, that she purchased
and paid for the property, and that she caused it to be con-
veyed to herself and her husband, the appellant would not,
therefore, be entitled to the relief prayed.

But a great deal of evidence was produced by the plaintiff
tending to show that she was induced against her will to have

the property so conveyed, by the conduct and persistent demands of her husband, and by the defendant, for the purpose of showing that the conveyance was the result of her free and voluntary act; and while, as was said in *Schroeder* v. *Loeber,* 75 Md. 195, under Art. 5, sec. 36 of the Code, where there were no exceptions in the Court below to the evidence, or to the sufficiency of the averments of the bill, we may decree according to the proof, "whether the *allegata* and *probata* correspond or not," we think, as the bill was filed and the evidence was offered on the theory that the Court was authorized under sec. 37 of Art. 16 of the Code, to restore the property to her, apart from any question of its having been procured by coercion or undue influence, and the attention of her counsel was not, therefore, specially addressed to that feature of the case, that the case should be remanded in order that the bill may be amended, and the parties may have an opportunity to offer additional evidence, if they desire to do so, reflecting upon the question of fraud, coercion or undue influence in the procurement of the deed to the plaintiff and defendant as "tenants by the entireties."

In 2 *Story's Eq.* sec. 1395, the author, after stating that it is now the established doctrine in equity that a married woman may bestow her separate property upon her husband, as well as upon a stranger, says: "But, at the same time, Courts of equity examine every such transaction between husband and wife, with anxious watchfulness and caution and dread of undue influence; and if they are required to give sanction or effect to it, they will examine the wife in Court, and adopt other precautions to ascertain her unbiased will and wishes."   A similar expression of the jealous care with which Courts of equity guard the interests of the wife in such transactions is found in *Farmer's Executor* v. *Farmer,* 39 N. J. Eq. 216, where the Court held that gifts by a wife to her husband "are to be closely inspected on account of the danger of improper influence, but if they appear to have been fairly made, and to be free from coercion and undue influence, they ought to be sustained."   And in the case of *Liv-*

*ingston* v. *Hall,* 73 Md. 386, CHIEF JUDGE ALVEY refers to the above section of *Story's Eq.,* and says that "it has been held by Courts of high authority, and upon full and careful consideration, that a gratuitous conveyance by a wife of her property to her husband will be held void, unless it affirmatively appears from the attending circumstances, or otherwise, that it was her voluntary act, free from any undue influence exercised by her husband." See also *Bradish* v. *Gibbs,* 3 Johns. Ch. p. 589; *Parks* v. *White,* 11 Ves. 222; *Whitridge* v. *Barry,* 42 Md. 140.

If, therefore, the interest of the appellee in the property referred to in this case was obtained by him by coercion or undue influence brought to bear by him upon the appellant, it is the plain duty of a Court of equity to grant her relief.

We fully concur in the conclusion reached by the Court below, and for the reasons stated and upon the authorities cited by that Court, that, as the result of the divorce, the appellant and appellee now hold the property as tenants in common. But for the reasons we have stated the decree will be reversed, and the case be remanded, in order that the bill may be amended and the parties may produce additional evidence if they desire to do so.

> *Decree reversed and case remanded for further proceedings in accordance with views herein expressed, the costs in this Court and in the Court below to abide the final decree in the case.*