# JOHN BRELL

## vs.

## MARGARET BRELL.

*Husband and Wife—Wife's Money Used by Husband—Repay-
ment—Property Held by Entireties—Appoint-
ment of Trustee.*

In a suit between a man and woman as to the proceeds of
the sale of property jointly owned by them, *held* that, in view
of the woman's testimony that they were married, of their hav-
ing lived together as man and wife, and of the man's having
had the deed to the property made to himself and the woman
as his wife, they should be regarded as husband and wife for
the purpose of the case, in spite of the man's denial of the exist-
ence of that relation.                                          p. 448

The admissions and declarations of the husband and wife are
admissible to prove their marriage.                            p. 448

The proceeds of the sale of a farm, and of a mortgage for a
part of the price, belonging to a man and his wife, having been
applied, with the wife's acquiescence, on a debt due by the hus-
band, and in payment of their joint living expenses, there was
no obligation on the husband to repay any portion thereof to
the wife, in the absence of an express promise by him to do so.
pp. 448-450

That a man uses his wife's money, with her acquiescence,
does not give her a claim against him, unless, at the time of
receiving or using the money, he expressly promises to repay it.
p. 449

That a husband, on purchasing property, has the deed made
to himself and wife as tenants by the entireties, involves a gift
by him to her of the interest thereby conveyed to her.    p. 450

Where a farm and a mortgage belonged to a man and wife as
tenants by the entireties, they had a like title to the proceeds
of the sale of the farm and mortgage, with a right in the sur-
vivor to take the whole.                                      p. 450

In a suit involving the ownership of a fund belonging to the plaintiff and defendant, husband and wife, as tenants by the entireties, *held* that a trustee should be appointed to receive such fund, and invest it under an order of court, one-half of the net income therefrom to be paid to each party until the death of one of them, and the corpus to be paid to the survivor, unless sooner distributed by agreement of the parties.    p. 451

*Decided June 25th, 1923.*

Appeal from the Circuit Court of Baltimore City (CAR-ROLL T. BOND, J.).

Bill by Margaret Brell against John Brell. From a decree for plaintiff, defendant appeals.   Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Philip B. Perlman* and *Jerry L. Smith*, with whom was *Ogle Marbury* on the brief, for the appellant.

*Charles Jackson*, with whom was *Arthur R. Padgett* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

The bill of complaint in this case, which was filed in the Circuit Court of Baltimore City, on August 8th, 1922, alleges that the plaintiff, Margaret Brell, and the defendant, John Brell, her husband, were the owners as tenants by the entireties of a small farm in Anne Arundel County, Maryland, which they sold on the 21st of October, 1918, for the sum of $5,800, $1,800 of which was paid to the defendant, and a mortgage executed to him and the plaintiff for the balance; that in 1922 the plaintiff was induced by her said husband to execute a release or assignment of said mortgage upon his promise that the proceeds would be invested or deposited in bank in their joint names, but that she has "now discovered" that the defendant purchased and paid for out of the proceeds of said farm a property known as No.

1035 Hollins Street, in Baltimore City, and has taken the title to the same in his own name; that ever since the defendant received the proceeds of said mortgage he has treated the plaintiff, who has been an invalid for the past five years, unable to take care of herself or to move from place to place without assistance, with great cruelty and indifference and thereby compelled her to leave him and take up her residence with her children, and that he intends to defraud and deprive her of her share of the said sum of $5,800, one-half of which he should be required to pay to her; that the defendant conducts at No. 1035 Hollins Street a hardware business, in which he used a part of the proceeds of said farm to purchase his stock of goods, and that he also deposited in the Calvert Bank, in Baltimore City, in his own name in the savings department of said bank the sum of $2,000, and the further sum of $200 in a checking account, both of which sums are part of the proceeds of said farm, that at the time of the purchase of the Hollins Street property the defendant stated to the plaintiff that the title to the same would be taken in their names, and that at the time he commenced said business it was understood and agreed between them that it was to be their "joint business"; that it was also understood and agreed that the money deposited in the Calvert Bank was to be deposited in their joint names, and that the plaintiff believes and avers that the defendant is about to sell the Hollins Street property and said business, and to withdraw the deposits in said bank for the purpose of defrauding her.

The prayers of the bill were (1) that John Brell be enjoined from drawing any part of the money in said bank, from disposing of said property and from selling or disposing of the stock of goods in said property "in bulk." (2) That the Calvert Bank be enjoined from paying to the defendant any part of the money deposited in said bank. (3) For a decree requiring the defendant to pay to the plaintiff a sum equal to one-half of the proceeds of said farm, and for the appointment of a receiver to take charge of said property,

business and money to the end that the same might be divided between the plaintiff and the defendant.

The evidence shows that the plaintiff, who was a widow with three young children, and whose name was Margaret Fisher, had known the defendant in Germany for about a year before they came to this country to live. The defendant came to America in 1889, bringing with him the plaintiff and her children, and he and the plaintiff have lived here as man and wife ever since. He secured work as a stevedore and purchased a home at Locust Point. After living at Locust Point about five or six years he sold his house and they moved to Anne Arundel County, where he rented the little farm, containing about twenty-one acres of land, which he afterwards purchased in 1895 and caused the deed to be made to "John Brell and Margaret Brell, his wife." The evidence also shows that the plaintiff had no means, and that the defendant paid for the farm, and he states in his answer that the reason he had the deed made to himself and the plaintiff was that he wanted to preserve the property as a home. The evidence further shows that the plaintiff's health became very bad (she stating in her testimony that she told the defendant that she was no longer well enough to get along on the farm and that the best thing to do would be to sell it), and that they determined to sell the farm, and sold it in 1918 for $5,800. $1,800 of the purchase price was paid to the defendant, and the purchaser executed a mortgage to him and the plaintiff for the balance of $4,000. After the sale of the farm the defendant and the plaintiff went to Baltimore to live. The defendant purchased in his own name the property No. 1035 Hollins Street, where he conducted a hardware business on the first floor, and he and the plaintiff made their home in the upper stories of the building. The plaintiff's health became so bad that she could not take a bath, fix her hair or go to bed without assistance, and had to be carried up and down stairs by the defendant, and defendant had to employ a woman to prepare their meals and to take care of the plaintiff

and their home. The plaintiff became dissatisfied because, she says, she was not receiving all the attention she should have, and decided to go to her son's home to live, and the defendant entered into an agreement to pay her son and his wife $10 per week for the plaintiff's board and the care and attention she required, and also to pay for any medical attention she might require. $200 of the first payment on the farm was paid to the broker who secured the purchaser, and in April, 1922, the defendant and the plaintiff were compelled to sell the mortgage of $4,000 for $3,350 in order to raise $950 which he had borrowed from one of the plaintiff's sons, who was pressing him for payment. At the time the bill was filed there was deposited in the Calvert Bank, in the name of the defendant, $2,017.20 in the "savings department" and $337.96 in a checking account. The evidence further shows that the plaintiff united in the sale of the farm and mortgage voluntarily for the purposes we have stated; that she knew that the money was paid to the defendant, and that he paid out of the amount he received from the mortgage his indebtedness to her son to the amount of $950, and there is not the slightest evidence in the case to support the averments of the bill that the farm was sold and the mortgage assigned with the understanding between the plaintiff and the defendant that the proceeds were to be invested or deposited by him in their joint names. On the contrary the plaintiff testified that she had no conversation with the defendant on the subject, and the farthest she was willing to go in her testimony was that she "expected" to get "something out of it" or "half" of it from her husband because she "worked in the house for my husband and my children," while the defendant testified positively that there never was any such understanding, and further testified that the money he received from the sale of the farm and mortgage was not used in the purchase of his stock in the hardware business, and a very little, if any, of it in the purchase of the Hollins Street property; that he had not done any business for the last five years, and that the

difference between the amount in bank and the amount actually realized from the sale of the farm and mortgage had been used in paying living expenses, doctors' bills and a housekeeper to take care of the plaintiff and their home. Nor is there any evidence of the cruel treatment of the plaintiff by the defendant alleged in the bill.

In his answer the defendant alleges that he was never married to the plaintiff, that he had guarded that matter closely ever since they left Germany, but that as she had seen fit to divulge it he felt at liberty to make the statement in his answer. He also testified that he and the plaintiff had never been married, but in view of her testimony that they were married before they left Germany, their living together as man and wife, and his having the deed for the farm, and also the mortgage for $4,000, made to himself and the plaintiff, as his wife, we think, at least so far as the farm and the proceeds of the sale thereof are concerned, and for the purposes of this case, that they should be regarded as husband and wife. The admissions and declarations of the husband and wife have always been accepted in this State to prove their marriage. *Craufurd* v. *Blackburn,* 17 Md. 49; *Jackson* v. *Jackson,* 80 Md. 176; *W., B. & A. R. Co.* v. *State,* 136 Md. 103; 18 *R. C. L.,* sec. 51, p. 424.

The appeal in this case is by the defendant from the decree of the court below requiring him to immediately pay to the plaintiff the sum of $2,450 and continuing the injunction theretofore granted until said sum was paid. No opinion appears to have been filed by the court below and we are not therefore advised upon what theory the decree was passed. As we have said, the proceeds of sale of the farm and mortgage were paid to the defendant with the knowledge and acquiescence of the plaintiff, who likewise acquiesced in the application of $950 of said money to the payment of the debt due one of her sons, and there is no evidence to show that the stock in the hardware business or the Hollins Street property was purchased with the proceeds of sale of said farm and

mortgage. The defendant states that they were not so pur-
chased, and the plaintiff says that the Hollins Street propery
was purchased before the sale of the mortgage, while the un-
contradicted evidence in the case is to the effect that the differ-
ence between the aggregate amount in bank, and the amount
actually realized from the sale of the farm and mortgage, was
used to meet the living expenses of the defendant and his
wife. Under such circumstances, in the absence of an express
promise of the defendant to repay the amount paid to the
plaintiff's son and for the living expenses mentioned, there
is no implied obligation on his part to do so. This is the
settled rule in this State, and one that has been frequently
applied. In the case of *Grover, etc., Co.* v. *Radcliff*, 63 Md.
496, CHIEF JUDGE ALVEY said: "But if such money or other
separate property of the wife has been received by the hus-
band, with the knowledge and acquiescence of the wife, with-
out such express promise at the time, no implied assumpsit,
either legal or equitable, will arise to support a claim against
the husband or his estate. The wife having the *jus disponendi*
of her separate property, if she thinks proper to let her hus-
band have it, or appropriate it, without any express promise
or agreement at the time to account for or repay her the
amount so received or appropriated, she cannot afterwards set
up a claim against the husband upon the footing of a creditor.
In such case she is taken to have acquiesced in the appropria-
tion of the fund for the common benefit of herself and hus-
band, or for the benefit of the family." In *Farm. & Mer. Nat.
Bank* v. *Jenkins,* 65 Md. 245, the Court used this language:
"And whatever may have been the general understanding, that
the money thus received by him belonged to his wife, and for
which he ought to be accountable, the proof fails to show that
it was received by him under an agreement to repay to her, or
to invest it for her use," and in *Jenkins* v. *Middleton,* 68 Md.
540, the Court said: "It is settled upon the soundest reasons
that if a man uses the money of his wife with her acquies-
cence, she does not acquire a claim against him, or his estate,

unless at the time of receiving or using the money, he made her an express promise to repay. She cannot become a creditor under these circumstances, by reason of the fact alone that her husband has received the benefit of her money. There must be an express and specific promise to repay her. It is useless to agitate this question, because it is the settled law of the court." The rule was also stated and applied in *Tyson* v. *Tyson*, 54 Md. 35, in the later cases of *Reed* v. *Reed*, 109 Md. 690, and *Nihiser* v. *Nihiser*, 127 Md. 451.

To the $2,017.20 and the $337.96 deposited in the Calvert Bank, which the appellant says are parts, and all that remains, of the proceeds of sale of the farm and mortgage mentioned, we think a different principle applies. The defendant caused the deed for the farm to be made to himself and his wife as tenants by the entireties, and the deed must therefore be regarded as a gift to the plaintiff of the interest in said farm thereby conveyed to her. *Meyers* v. *Loan & Sav. Assn.*, 139 Md. 607. The mortgage to secure the $4,000 was also made to both of them. The amounts in the Calvert Bank are a part of the proceeds of sale of the farm and mortgage, and the interest of the plaintiff and defendant in said farm and mortgage, in the absence of an agreement to the contrary, must follow the funds derived from their sale. As the farm and mortgage belonged to them as tenants by the entireties, they have the same title to the two sums in bank, with the right of the survivor to take the whole. In the case of *Masterman* v. *Masterman*, 129 Md. 167, where the Court was dealing with the disposition of the proceeds of a fire insurance policy which covered property held by the husband and wife as tenants by the entireties, after suggesting that a decree might be obtained under the provisions of the Code for a sale of the property and investment of the proceeds, CHIEF JUDGE BOYD said: "If sold, the proceeds of sale, together with the insurance money, should be invested under the order of the court, and one-half of the net income paid to each party until the death of one, when the corpus should be paid

to the survivor, unless it be sooner distributed, either by agreement of the parties, or by order of the court, in case there be such a change of conditions as will under the law applicable justify such distribution." Following the suggestion made in that case, a trustee should be appointed by the court below in this case to receive the two sums deposited in the Calvert Bank, and invest the same under the order of said court; one-half of the net income received therefrom to be paid to each party until the death of one of them, and the corpus to be paid to the survivor, unless sooner distributed by agreement of the parties.

It follows from what has been said that the decree of the court below must be reversed and cause remanded in order that a decree may be passed in accordance with the foregoing opinion.

> *Decree reversed and cause remanded in order that a decree may be passed in accordance with the opinion of this Court, the costs in this Court to be paid by the appellant and the costs in the court below to be paid as provided in said decree.*