**Russell HARDY, Sr., Plaintiff,**

v.

**Elisabeth C. HARDY, Defendant.**

**Civ. A. No. 4075-61.**

United States District Court

District of Columbia.

Feb. 23, 1966.

Malvern J. Sheffield, Jr., Brookhart, Becker & Dorsey, Washington, D. C., for plaintiff.

Michael F. X. Dolan, Washington, D. C., for defendant.

KEECH, District Judge.

This action is before the court following affirmance by the Court of Appeals of this court's judgment in Hardy v. Hardy, D.C., 235 F.Supp. 208 (1964). The original order of affirmance, dated December 15, 1965, was modified on January 5, 1966, to include a recitation that the affirmance was without prejudice to a renewal of plaintiff's motion under Fed. R.Civ.P. 60(b). This court has granted plaintiff's motion to effectuate the affirmed judgment, with an exception as to count 4 of plaintiff's supplemental and amended complaint, in regard to which plaintiff asks for relief under 60(b) (5) and (6)—vacation of judgment—and the entry of summary judgment. In 1964, when this case was originally determined, the plaintiff Russell Hardy and defendant Elisabeth C. Hardy were still married. This court held it was therefore unable to partition property held by the couple in an estate by the entireties. Since that judgment was entered the plaintiff, Russell Hardy, has been granted a divorce by the Circuit Court of Montgomery County, Maryland, on the ground of defendant Elisabeth Hardy's desertion. Plaintiff now asks this court to declare forfeited the defendant's one-half interest in the fund arising from the sale of the marital domicile in Kenwood, Maryland, and to grant summary judgment in plaintiff's favor as to the entire fund. Plaintiff relies on the doctrine enunciated in Moore v. Moore, 51 App.D. C. 304, 278 F. 1017 (1922), and subsequent cases, to the effect that when title is taken jointly in the names of husband and wife, the husband furnishing all the consideration, the wife's continued interest in the property is dependent upon her faithful observance of the marital vows, and that a breach of those vows results in a forfeiture of her interest. Defend-ant contends that the law of Maryland must be applied, and that under Maryland law the taking of property jointly in the name of husband and wife with one spouse alone providing the consideration works as an absolute gift of a one-half interest to the non-paying spouse.

Plaintiff and defendant were married in 1939. On August 1, 1942, plaintiff purchased, with his funds, a house in Kenwood, Maryland, to be used as the marital domicile, placing title in the name of his wife. In 1946, through a straw, title was placed in the Hardys as tenants by the entireties. Fifteen years later, in September, 1961, following increased marital difficulties, a contract for the sale of the Kenwood house was executed by the husband and wife. This was followed on October 10, 1961, by defendant's desertion of the plaintiff. The house was sold on October 17, 1961. There was an agreement dated October 17, 1961, between Mr. and Mrs. Hardy that payment for the property would be in the form of a check made to the Hardys as tenants by the entireties, and it was further stated that the agreement was "without prejudice to the respective rights of Russell Hardy Sr. and Elisabeth C. Hardy". The check the Hardys received in payment was drawn on the Riggs National Bank in Washington, and entrusted to Michael F. X. Dolan, defendant's attorney. In December of 1961, Riggs cashed this check, issuing to the Hardys, again as tenants by the entireties, six cashier's checks drawn on that bank. On June 20, 1962, the Circuit Court of Montgomery County entered an order, pursuant to a petition by Elisabeth Hardy, permitting the deposit of the checks with the Clerk of that Court pending final determination of the case of Hardy v. Hardy in this Court. On April 20, 1965, plaintiff was granted a divorce by the Circuit Court of Montgomery County on the ground of defendant's desertion on October 10, 1961; no appeal was taken from that decree. Subsequently, on November 15, 1965, the Maryland Court ordered its appointed

trustee to deposit the six checks in interest-paying savings and loan institutions.

Defendant contends that the law of Maryland controls. Plaintiff argues that the situs of the real estate, from the sale of which the contested fund resulted, does not determine the law to be applied. It is his contention that, from the time this suit was brought until the time at which the forfeiture is said to have occurred, the contested property was personalty, in the form of either a check drawn on a Washington bank or cashier's checks of a Washington bank; that, no matter where the checks themselves were, the situs of the obligation was in the District of Columbia and District law should govern rights thereto. It is argued that defendant's interest in the fund was forfeited on the date the Maryland decree awarding plaintiff a divorce on the ground of defendant's desertion became final, this date being prior to the time the checks were deposited in Maryland savings and loan institutions. Plaintiff then submits that the *Moore* doctrine, which has hitherto been applied only to real estate, should be applied to intangible personalty. Counsel cites the broadening trend evidenced in Schultze v. Schultze, 112 U.S.App.D.C. 162, 300 F.2d 917 (1962), where the *Moore* doctrine was extended to commercial realty.

 Plaintiff further maintains that jurisdiction arises solely from D.C.Code § 16–409 (1961), re-enacted as § 16–910 (Supp. V, 1966). The court is constrained to reject this contention. The legislative history of § 16–409 reveals a single Congressional intent: to endow the District of Columbia court which entered a divorce decree with the power to adjudicate, in the same action, the property rights of the parties before it. S.

Rep.No. 720, 74th Cong., 1st Sess., p. 2 (1935); H.R.Rep.No.1532, 74th Cong., 1st Sess., pp. 4–5 (1935). Prior to this, a separate equity action was required. Neither Scholl v. Scholl, 80 U.S.App.D.C. 292, 152 F.2d 672 (1945), nor Heath v. Heath, 89 U.S.App.D.C. 68, 189 F.2d 697 (1951), both cited by plaintiff, holds that § 16–409 is the sole basis upon which a District of Columbia court can exercise jurisdiction where the parties before it have been divorced by a foreign decree. The defendant in *Scholl* maintained that § 16–409, in particular the words "in the same proceeding in which such decree is entered", by implication ousted the court of jurisdiction where that court was not also entering a divorce decree. Judge Prettyman, in rejecting this contention, did not say the court had jurisdiction under § 16–409, but rather cited general jurisdictional principles. See 80 U.S.App.D.C. 292, 295, 152 F.2d 672, 675. The holding in Heath v. Heath sprang from the substantive portion of § 16–409; it held that the section applied to property settlement agreements when a foreign divorce was obtained. Thus a husband and wife could retain the incidents of a tenancy by the entirety or a joint tenancy after their marriage was dissolved if they so agreed. Again, there is no statement that § 16–409 is the basis of jurisdiction in an action to adjudicate the property rights of foreignly divorced parties. The language of the section, its legislative history, and the cases which interpret it, all lead the court to believe that plaintiff's contention is not correct. This is an equity action and the parties are before the court. Furthermore, while the fund is physically in Maryland, the Maryland Court, under whose control it now is, has specifically ordered that it be held pending the disposition of this suit.[1] The court bases its jurisdiction

---

1. The relevant part of the order of The Circuit Court for Montgomery County, Maryland, reads as follows:

"ORDERED this 9th day of November, 1965, by the Circuit Court for Montgomery County, sitting as a Court of Equity, that cashier's checks of the

Riggs National Bank of Washington, D.C. * * * be delivered by Clayton K. Watkins, Clerk of this Court, unto Barry H. Helfand, Esq., duly appointed Trustee, he to deposit said checks in Federally insured banks or savings institutions in denominations not to ex-

on the general grant of authority found in D.C.Code § 11–306 (1961).

Acting under the jurisdiction so conferred, the court concludes that Mrs. Hardy is entitled to half the contested fund on two separate grounds: first, the agreement (as fully set out hereinafter) that the sale of the Kenwood property would be without prejudice to their respective rights; and second, apart from the agreement, the consideration which the court finds Mrs. Hardy gave for the rights she received in the tenancy by the entireties that existed in the checks.

■ It will be gleaned from what follows that basic to both grounds is the accepted proposition that the law of the situs of realty determines the rights and obligations to that property. DeVaughn v. Hutchinson, 165 U.S. 566, 570, 17 S. Ct. 461, 41 L.Ed. 827 (1896); Darby's Lessee v. Mayer, 10 Wheat. (23 U.S.) 465, 468–469, 6 L.Ed. 367 (1825). See Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259 (1924); Greenwood v. Page, 78 U.S.App.D.C. 166, 168, 138 F.2d 921 (1943). Our Court of Appeals, in Filson v. Fountain, dealing with rights in real estate in New Jersey, stated:

"Since the land involved in this suit is in New Jersey, the law of that state must govern any decision here with regard to the interests, legal or equitable, of the parties in that property * * *".

84 U.S.App.D.C. 46, 48, 171 F.2d 999, 1001, reversed on other grounds, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1948). In regard to equitable interest, the Restatement of Conflicts states that the issue of whether a person has an equitable interest in land is determined by the law of the state where the land is, and further, that a court of one state cannot by its decree create an equitable interest in the land of another state. Restatement, Conflict of Laws §§ 239, 240 (1934); Restatement (Second), Conflict of Laws §§ 239, 240 (Tent.Draft No. 5, 1959). These principles are grounded on strong policy considerations. Land is within the exclusive control of the state of the situs, and that state legitimately has a paramount interest in the determination of rights to land within its borders. Considerations of certainty, convenience, and uniformity also dictate the rule. Transactions in land are particularly important to the parties involved, and real advantages accrue from the existence of certainty as to which law will determine the consequences of the partys' actions.

■ ■ the parties intended their respective rights in the checks to be determined according to the rights in the Kenwood realty, the rights to which would clearly be determined by Maryland law, it follows that the parties intended the same Maryland law to govern their rights in the checks. The court does not find the agreement of the parties of October 17, 1961, to be ambiguous.[2] We must assume that the addition of the last sentence of the agreement was purposeful. It indicates an intent to retain their respective rights as if no sale had taken place. Any other reading would reduce the sentence to surplusage. The correctness of this interpretation is demonstrated by the plaintiff's own treatment of the agreement. In his amended and supplemental complaint of July, 1962, filed nine months after the agreement was signed and the property was sold,

ceed $10,000.00 in any one institution, said funds there to remain until final determination of the case of Hardy v. Hardy, et al., now pending in the U. S. District Court for the District of Columbia, and being specifically described as Civil Action No. 4075–61 * * *".

2. The agreement is as follows:
"Oct 17 1961
Conroy and Williams and Russell Hardy Sr. agree that the check in payment for property 6400 Brookside Drive, Kenwood, Maryland, is to be made to Russell Hardy Sr and Elisabeth C Hardy as tenants by the entireties. This agreement is without prejudice to the respective rights of Russell Hardy Sr and Elisabeth C. Hardy.
Conroy & Williams
By /s/ Victor A. De Leon
/s/ Russell Hardy Sr.
/s/ Elisabeth C. Hardy"

plaintiff, in referring to the proceeds of the sale, asked that the defendant Mrs. Hardy be declared a trustee as to "the interest which she *now* holds in said *real estate* \* \* \*". (Emphasis added.)[3] The court finds that it was the intent of the parties to maintain the same respective rights in the property that would exist had the real property never been sold. This compels the application of Maryland law, under which, as will be seen, Mrs. Hardy is entitled to a one-half interest.

As an alternative and separate ground, the court believes the Moore doctrine cannot be applied because Mrs. Hardy gave consideration for her interest in the tenancy by the entireties that existed in the checks.

In 1942 Mr. Hardy purchased the house in Kenwood with his own funds and placed title in his wife. Since this real estate was in Maryland, Maryland law must be applied in determining the rights which arose out of the transaction. The Maryland courts have held that, where a husband purchases property but title thereto is taken in the wife's name, there is a rebuttable presumption that the conveyance was intended as a gift or advancement to the wife, and that ordinarily no resulting trust arises in favor of the husband. Groff v. Rohrer, 35 Md. 327 (1872); Johnston v. Johnston, 96 Md. 144, 53 A. 792 (1902). In such a case the husband has not only the burden of establishing the resulting trust, but also is required to overcome the presumption of a gift or advancement arising from the relationship of the parties. Powell v. Mackenzie, 137 Md. 266, 112 A. 290 (1920). There is no evidence to rebut the presumption of a gift. True, little emphasis was laid on this point during arguments, and it is conceivable that Mr. Hardy might be able to produce evidence bearing on his intent. However, no matter which way the issue is resolved the ultimate rights of the parties on this motion will remain the same. For this reason no genuine issue of material fact arises. Let it be assumed that Mr. Hardy could show facts that would give rise to a resulting trust. It would follow, under that assumption, that Mrs. Hardy gave no consideration for the placing of title in her as a tenant by the entirety. Nevertheless, under Maryland law, absent a showing of fraud, coercion, misrepresentation or undue influence at the time of the transaction, placing title in an estate by the entirety works as an absolute gift to the non-paying spouse of an equal interest. Anderson v. Anderson, 215 Md. 483, 138 A.2d 880 (1958); Brell v. Brell, 143 Md. 443, 450, 122 A. 635 (1923); Reed v. Reed, 109 Md. 690, 72 A. 414 (1909). If no resulting trust occurred, then Mrs. Hardy made a gift to Mr. Hardy. Under either analysis, Mrs. Hardy enjoyed an interest in the Kenwood house equal to the interest of Mr. Hardy. It follows that she gave consideration in the same amount as Mr. Hardy for the check received for the sale of the house.

Because the law of the situs governs rights to realty, the *Moore* doctrine cannot be applied to real estate outside the District of Columbia. The only conceivable application of the doctrine in this case would be to the personalty, the obligation of a Washington bank. It is clear, however, that, in regard to the checks, Mrs. Hardy gave a consideration equal to that of her then husband. Thus a basic requirement of the *Moore* cases is absent: one spouse did not give all of the consideration. It follows that Mrs. Hardy did not forfeit her equal interest in the proceeds of the sale of the Kenwood house.

Since defendant has made no cross-motion for summary judgment, the issue arises as to whether the court can grant a judgment to her absent such a motion.

3. At the close of his Supplemental and Amended Complaint plaintiff states:
 "WHEREFORE the plaintiff prays:
 1. That this Court enter its decree declaring the defendant a trustee of the title and interest which she now holds in said real estate, and that she be ordered to convey to the plaintiff by appropriate deed all of her right, title and interest therein. \* \* \*".

Prof. Moore, in his treatise on Federal Procedure, recognizes the court's power to enter judgment for the non-moving party when the power to render a summary judgment has been invoked by the movant, and the case clearly warrants judgment for the opponent. 6 Moore, Federal Practice § 56:12 (2d ed. 1965). The cases support this view. Local 33, International Hod Carriers, etc. v. Mason Tenders, 291 F.2d 496 (2d Cir., 1961); United States v. Franklin Fed. Sav. & Loan Ass'n, 140 F.Supp. 286 (E.D.Pa., 1956); American Auto Ins. Co. v. Indemnity Ins. Co. of No. America, 108 F.Supp. 221 (E.D.Pa., 1952), aff'd 228 F.2d 622 (3rd Cir., 1956). No different principle would be applicable because a partial summary judgment for each party is appropriate. The court finds no genuine issue of material fact to impede summary judgment as to either party.

The record discloses that the proceeds of the sale of the Kenwood property amounted to $66,060.80. Of this amount, $10,520.37 was used to satisfy a lien of the United States Government for the unpaid separate personal income taxes of the plaintiff.

It follows that plaintiff's motion for relief from the judgment of October 30, 1964, as to count 4 should be granted, and summary judgment entered in favor of the plaintiff and the defendant as hereinafter set out.

It is this 23rd day of February, 1966,

■■■ Ordered that the judgment of this court of October 30, 1964, with respect to count 4 of plaintiff's supplemental and amended complaint be vacated, and that judgment be granted in favor of the plaintiff, Russell Hardy, in the sum of $22,510.33 together with any interest earned on that sum (said sum being one-half of the proceeds realized from the sale of the Kenwood property less payment for plaintiff's separate income tax), and that judgment be granted in favor of the defendant Elisabeth C. Hardy in the amount of $33,030.40 together with any interest earned on that amount, and further, that a proportionate share of any charges growing out of the trusteeship created by order of the Circuit Court for Montgomery County, Maryland, be deducted from the above amounts.[4]

4. Following protracted oral arguments on this motion after the original appellate consideration, and subsequent to the preparation of the above memorandum, Mr. Dolan, Mrs. Hardy's attorney, sent a letter to the court and attached to it an unsigned agreement, dated September 12, 1961, which was to the effect that the proceeds of the sale of the Kenwood house would be treated as if no sale had taken place. This agreement, according to defendant, was the work of Mr. Hardy, who subsequently refused to sign it. This letter and attached agreement brought in reply an affidavit from Mr. Hardy to the effect that "at the time" the unsigned agreement was submitted to him, he had no intention of treating the property as if a sale had never taken place.

The court feels that neither of these documents was timely. Furthermore, even if they are considered, the court does not feel they produce a material question of fact. It was apparent long before the hearing that the defendant was going to rely on the signed agreement of October 17, 1961, which the court cites in its decision. Each of the parties submitted numerous memoranda and counter memoranda. Heavy emphasis was laid on the signed agreement during oral arguments. At no time did Mr. Hardy, an attorney himself and represented by very able counsel, raise the issue of his intention at the time the agreement of October 17, 1961, was signed, or suggest it was other than what the agreement clearly indicated. Against this background, Mr. Hardy, in his belated affidavit, states that it was not his intention "at the time" of the unsigned September 12, 1961, agreement. He does not state that it was not his intention to treat the property as if it were still real estate at the time of the agreement this court relies on in its first ground; nor would he be well advised to do so, since his subsequent complaint in terms indicates a clearly contrary intent. The court finds no material issue of fact to have been raised by the affidavit. No genuine issue of fact exists unless the fact alleged has legal probative force as to a controlling issue. See Neff v. World Pub. Co., 349 F.2d 235 (8th Cir., 1965).