McCALLY *v.* McCALLY

[No. 274, September Term, 1967.]

*Decided July 8, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH,
JJ.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simp-
son, H. Algire McFaul, William T. Wood* and *Simpson &
Simpson* on the brief, for appellant.

No brief filed for appellee.

FINAN, J., delivered the opinion of the Court.

The wife (appellee) filed a bill of complaint in the nature
of a partition suit for the sale of a home in Montgomery
County, formerly owned by the parties as tenants by the en-
tireties, which by a decree granting the husband a divorce *a
vinculo matrimonii* was converted into a tenancy in common.
The ground for the divorce was the adulterous conduct of the
wife. The husband filed an answer to the bill and a cross bill
of complaint asking for a declaratory judgment and equitable
relief and filed a motion for summary judgment. The wife filed
demurrers to the answer and to the cross bill for declaratory
judgment and equitable relief, a motion *ne recipiatur* to the
appellant's motion for summary judgment and her own motion
for summary judgment. The lower court decreed that the two
demurrers, the cross bill, the motion *ne recipiatur* and the hus-
band's motion for summary judgment be denied and the wife's
cross motion for summary judgment and petition to appoint
a trustee for the sale of the property be granted. The former
husband, defendant and cross complainant below, filed this
appeal.

The husband alleged in his pleadings that shortly after their
marriage in 1953 he acquired by inheritance an undivided one-
half interest in a dwelling in the District of Columbia. He sub-
sequently acquired the other undivided one-half interest from
his brother, and title was taken in the name of the husband and
wife as tenants by the entireties.

The husband further alleged that the wife "began a syste-
matic course of conduct calculated to persuade and coerce him

into selling said property in the District of Columbia and moving to and acquiring a home in Montgomery County, Maryland, for the home of this defendant and his family. That from time to time the said Ruth G. McCally did state that she would leave the marital domicile of the parties hereto and would not continue to live with this defendant Charles T. McCally unless he did acquire a home in Montgomery County, Maryland, for himself, his then wife, and family." The husband further alleged that as a result of the wife's demands the property in the District of Columbia was sold and he purchased the home in Montgomery County, Maryland, title to which was taken by the couple as tenants by the entireties, the wife making no monetary contributions to either the purchase or maintenance of the property.

The husband contends that the court should have decreed a constructive trust in his favor of the undivided one-half interest of the wife in the Montgomery County property. In support of his contention he argues: (1) that the wife used undue influence and coercion to compel him to place the title to the property in their names as tenants by the entireties, thus negativing any donative intent on his part to make a gift to the wife; (2) that the gift of an undivided one-half interest in the home property to the wife was conditioned on her remaining "a faithful, chaste and dutiful wife and that the marriage of the parties would continue," and (3) that public policy and the principle of unjust enrichment should preclude the adulterous wife from retaining title to an undivided one-half interest in property, to the acquisition of which she has made no monetary contribution.

We do not agree with the appellant's contention, and we therefore affirm the actions of the lower court, granting the wife's cross motion for summary judgment and decreeing that a trustee be appointed to effect the sale of the property.

This court in *Gunter v. Gunter,* 187 Md. 228, 49 A. 2d 454 (1946) reaffirmed the effect which a divorce *a vinculo matrimonii* has on a tenancy by the entirety stating:

> "It is virtually conceded that the effect of the decree
> of divorce *a vinculo* was to convert the tenancy by the

entireties into a tenancy in common. *Reed v. Reed,* 109 Md. 690, 72 A. 414, 130 Am. St. Rep. 552; *Meyers v. East End Loan & Savings Ass'n,* 139 Md. 607, 116 A. 453. In the absence of fraud or undue influence the Courts will not inquire into the contributions of the parties prior to the joint acquisitions, or attempt an apportionment. *Brell v. Brell,* 143 Md. 443, 122 A. 635; *Reed v. Reed, supra.* The general rule is also recognized that 'by express provision of our chancery statute, any tenant in common has the right to secure separate enjoyment of his interest either by partition or by sale and division of the proceeds. Code 1939, Art. 16 Sec. 159. [now Sec. 154]' *Cook v. Hollyday,* 186 Md. 42, 45 A. 2d 768, 771. See also *Birckner v. Tilch,* 179 Md. 314, 325, 18 A. 2d 222." *Id.* at 231, 49 A. 2d at 456.

In the case at bar neither the answer nor cross bill of the appellant, nor his affidavit in support of his motion for summary judgment, raised any material issues of fact. There were no material allegations which, if proven, would have supported a finding of fraud, coercion, misrepresentation or undue influence on the part of the wife. Indeed, the husband's pleadings reveal that when the property in the District of Columbia was placed in the joint names of the husband and wife as tenants by the entireties shortly after their marriage in 1953, it was done voluntarily on the part of the husband there being no allegation of any persuasion on the part of the wife whatsoever. The husband's pleadings do set forth that she later threatened to leave him unless he purchased a home for her and the family in Montgomery County, but they do not state that she coupled this threat with the demand that any purchase of a new home be acquired *in their joint names as tenants by the entireties,* even though she had already acquired an equity in the home purchased in the District of Columbia.

There is no merit to the husband's argument that when he caused the title to the Montgomery County property to be placed in the joint names of himself and his wife as tenants by the entireties, he made a gift conditioned upon the wife's re-

maining faithful, chaste and dutiful and the continuation of the marriage. Even if he personally entertained such an intention his position is not in harmony with the law of the State of Maryland. In *Anderson v. Anderson,* 215 Md. 483, 138 A. 2d 880 (1958), this Court was presented with a situation wherein the wife had contributed the major portion of the purchase price of a business property, and after she and her husband became estranged sought to obtain reimbursement of her contribution, on the theory that she and her husband constituted a partnership. This Court speaking through Judge Henderson said:

> "* * * The controlling fact in the instant case is that the whole property was acquired as tenants by the entireties. In legal effect, and in the absence of proof that it was not her voluntary act, this transaction on its face amounted to *an absolute gift. Reed v. Reed,* 109 Md. 690; *Whitelock v. Whitelock,* 156 Md. 115, 120. Cf. *Columbian Carbon Co. v. Kight,* 207 Md. 203. The authorities generally are in accord. See Note 43 A.L.R. 2d 917." (Emphasis supplied.) *Id.* at 488, 138 A. 2d at 883.

Although the appellant argued coercion on the part of the wife and pressed the theory of a conditional gift, the main thrust of his argument before this Court was that public policy should dictate that an adulterous spouse should not be unjustly enriched as a result of his or her culpable conduct and that where property is held as tenants by the entireties, and the wrongdoing spouse had not contributed to the purchase of the property, upon the issuing of an *a vinculo* decree the Court should impress upon the interest of the wrongdoer a constructive trust in favor of the innocent party.

The legal principle that a decree *a vinculo,* awarded one spouse because of the adultery of the other, works a divestiture of the interest of the wrongdoer in the real property purchased solely with the funds of the innocent spouse, and held in a tenancy by the entirety, has been recognized in at least five states and the District of Columbia. See *Schultze v. Schultze,* 112 U. S. App. D. C. 162, 300 F. 2d 917 (1962); *Oxley v.*

*Oxley,* 81 U. S. App. D. C. 346, 159 F. 2d 10 (1946) ; *Richardson v. Richardson,* 72 App. D. C. 67, 112 F. 2d 19 (1940) ; *Osborne v. Osborne,* 59 App. D. C. 288, 40 F. 2d 800 (1930) ; *Moore v. Moore,* 51 App. D. C. 304, 278 Fed. 1017 (1922) ; *Brison v. Brison,* 75 Cal. 525, 17 P. 689, 691 (1888) ; *Meldrum v. Meldrum,* 15 Colo. 478, 24 P. 1083 (1890) ; *Evans v. Evans,* 118 Ga. 890, 45 S. E. 612 (1903) ; *Brixel v. Brixel,* 230 Ill. 441, 82 N. E. 651 (1907) ; *In Re Nellie Lewis,* 85 Mich. 340, 48 N. W. 580 (1891) ; *Dickerson v. Dickerson,* 24 Neb. 530, 39 N. W. 429 (1888).

In *Moore v. Moore,* 51 App. D. C. 304, 278 F. 1017, 1018 (1922), the Court in affirming the lower court's decision dismissing the wife's bill of complaint for partition of the property held :

> "This property was purchased as a home for these parties, and was so used until the wife abandoned her husband and went to live with another man. After thus bringing disgrace upon herself and humiliation to her husband, she seeks the aid of the court of equity to drive the husband from his wrecked home or compel him to pay her half its value. Had she remained true to her marriage vows, she could not have maintained such a petition. The real basis of her contention, therefore, is her infidelity, resulting in the decree of divorce. The contention that the deed is without condition we may answer, as did the court in *Evans v. Evans,* 118 Ga. 890, 45 S. E. 612, 98 Am. St. Rep. 180 :
>
> " 'That as it would be insulting and indecent to incorporate in a deed of gift a provision making it void if the wife should be guilty of that crime [adultery], the husband must be supposed to have given and the wife to have accepted with the implied condition that the property should not be used for the support of the paramour, or for the maintenance of one who had not only violated the vows under which he had promised to endow her with his wordly goods, but had outraged him as a man, and repudiated him as a husband; that the real consideration of such a conveyance was mar-

riage and the continuance of the married state, which failed when by such an act the relation was rendered intolerable.' "

This Court has many times considered the legal effect of an absolute divorce decree on a tenancy by the entirety, as we have already set forth in this opinion. However, we know of no case wherein this Court has been asked to consider the question from the standpoint of public policy and the unjust enrichment which inures to the wrongdoer, as presented by counsel for the appellant in this case.

It is helpful to note what the United States District Court for the District of Columbia, the jurisdiction that nurtured *Moore, supra,* thought the Maryland law to be. In *Hardy v. Hardy,* 250 F. Supp. 956 (D. C. D. C. 1966) the husband, after an *a vinculo* decree had been obtained by him on the ground of the wife's desertion, sought to have the court declare forfeited the wife's one-half interest in the fund arising from the sale of the marital home in Montgomery County and give him judgment for the entire fund. The court rejected the husband's argument that the divestiture of the guilty spouse doctrine enunciated in *Moore* should apply, stating:

"* * *. Let it be assumed that Mr. Hardy could show facts that would give rise to a resulting trust. It would follow, under that assumption, that Mrs. Hardy gave no consideration for the placing of title in her as a tenant by the entirety. Nevertheless, under Maryland Law, absence of showing of fraud, coercion, misrepresentation or undue influence at the time of the transaction, placing title in an estate by the entirety works as an absolute gift to the non-paying spouse of an equal interest. *Anderson v. Anderson,* 215 Md. 483, 138 A. 2d 880 (1958); *Brell v. Brell,* 143 Md. 443, 450, 122 A. 635 (1923); *Reed v. Reed,* 109 Md. 690, 72 A. 414 (1909)."

* * *

"Because the law of the situs governs rights to realty, the *Moore* doctrine cannot be applied to real estate outside the District of Columbia." *Id.* at 961.

It is true that the court in *Hardy, supra,* was confronted with an *a vinculo* decree predicated on desertion and not adultery; however, it is our opinion that since both may be grounds for an *a vinculo* decree in Maryland, the Court in *Hardy* would have arrived at the same conclusion even if the *a vinculo* decree had been based on adultery.

Although we take sustenance from the interpretation given the Maryland law by the Federal Court in the District of Columbia, we would have no hesitancy in stating, even without the benefit of *Hardy,* that the doctrine of *Moore* has never been applied in this State, nor should it be. Not that the doctrine of *Moore* does not have much to recommend it, or that we do not view with gravity violations of the marriage bonds; but to incorporate the doctrine of the divestiture of the culpable spouse as enunciated by *Moore* into the law of Maryland would open a Pandora's box, possibly affecting the stability of land titles long thought secure, not to mention the engrafting of complications onto divorce laws already less than perfect.

The lower court relied on *Gunter v. Gunter, supra,* as clearly establishing that in the absence of fraud or undue influence, the courts of Maryland will not inquire into the contribution by parties to a tenancy by the entireties prior to the joint acquisition. When we couple the decision of *Gunter,* with the language of *Anderson v. Anderson, supra,* whereby an absolute gift is presumed when the non-contributing spouse is given an equal interest in the property as one of the tenants by the entireties, we conclude that the lower court in rejecting the doctrine of *Moore,* correctly interpreted the law of this State.

Should there be strong sentiment in this State that public policy requires the divestiture of the culpable spouse's interest in the tenancy by the entirety, we think such a change in the law, vitally affecting domestic relations, presents an area of the law to which the Legislature, rather than this Court, might properly address itself.

*Decree affirmed with costs.*